IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIMBERLY FASKING, ) | |
| HERBERT HICKS, and ) | |
| HEATHER BOOTHE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO.: |
| ) | 2:18-CV-00809-SRW |
| JOHN H. MERRILL, ALABAMA ) | |
| SECRETARY OF STATE, in his official ) | |
| capacity, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

COMES NOW the Defendant, Honorable John H. Merrill, Alabama Secretary of State, in his official capacity, by and through undersigned counsels, and does hereby submit the following:

**INTRODUCTION**

For nearly ten years, the Defendant has maintained an account on Twitter, a social media platform, using the "handle" @JohnHMerrill. Like many of Twitter's more than 300 million active users, the Defendant uses his account to communicate his thoughts and interact with other users by taking advantage of the various features the platform offers. He "tweets" messages; he "retweets" or "likes" the messages of others; he "follows" some accounts; and he "blocks" others. The Plaintiffs in this case - three users blocked from the @JohnHMerrill account - seek the extraordinary relief of an injunction and declaration against the Defendant for allegedly violating the First Amendment through this routine use of Twitter. According to the Plaintiffs, the Defendant's management of his personal Twitter account has become state action, and his

1

use of standard Twitter features is now constrained by the limitations of the First Amendment that apply to government action in a public forum.

Plaintiffs' novel claims fail. A First Amendment claim may be directed only at state action, not the Defendant's personal use of social media. Even assuming the presence of state action, the premise of the Plaintiffs' First Amendment argument - that the Defendant's Twitter account is a "forum" to which they have been denied access - is baseless. At most, the account is a channel for *the Defendant's* expression of free speech, and the requirement of viewpoint neutrality accordingly does not apply. Finally, the Plaintiffs also have several derivative claims raising an alleged right of access to official statements, and right to petition the government for redress of grievances that are equally unsupported by both the facts and the law. This Court should enter judgment for the Defendant.

## BACKGROUND

In October, 2009, prior to him becoming an elected official, the Defendant created a personal Twitter account, @JohnHMerrill. Through this account, the Defendant can post tweets, which are messages of up to 280 characters in length, to a webpage viewable by the public. The tweets are displayed in reverse chronological order on the page's "timeline.". The Defendant can also follow other users and view their tweets in a customized "feed," a dedicated webpage that displays the tweets of the users he follows. Other users can "reply" to the Defendant's tweets, which means responding with a tweet that appears both below the Defendant's tweet and on the responding user's page (under a tab labeled "Tweets & replies"); other users, in turn, can reply to these replies, creating a series of overlapping conversations ("comment threads"). During the six years that the Defendant operated the @JohnHMerrill account *before* his inauguration to the

Office of the Secretary of State[1], he tweeted about a wide range of topics, from politics to popular culture. The Official Twitter account of the Office of the Secretary of State was joined in May, 2009, and can be accessed at @alasecofstate. As noted on its Twitter page, this account is managed solely by the staff members of the Office of the Secretary of State and is used as a public forum to conduct official business.

Since assuming the Office of the Secretary of State, the Defendant has continued to operate his personal account @JohnHMerrill without the aid of staff, and now uses this platform to communicate with the public about his administration, among other topics. When the Defendant uses the @JohnHMerrill account, his tweets generally receive hundreds of replies and "likes" from other users. The Defendant can view those replies as well as tweets that "mention" the @JohnHMerrill account.

When the Defendant "blocks" a user, the user can no longer see or reply to @JohnHMerrill tweets. The user can, however, continue to participate in the comment threads appearing below @JohnHMerrill tweets by posting replies to other users who have replied to the Defendant. Because the account is viewable by the public, blocked users also can continue to view @JohnHMerrill tweets through a web browser on the same terms as the general public; "blocking" only prevents users from viewing @JohnHMerrill tweets when signed in to their accounts. Notably, the Defendant prides himself on being one of the most accessible and personally available elected officials in the history of the state of Alabama. The Defendant purposefully lists his cellphone number on his office business cards that he distributes to the public, thereby allowing anybody who desires to contact him directly. Blocking Twitter users

---

[1] The Official Twitter account of the Office of the Secretary of State was formed in May, 2009, and can be accessed at @alasecofstate. As noted on its Twitter page, this account is managed solely by the staff members of the Office of the Secretary of State and is used as a public forum to conduct official business.

from his personal account, therefore, does not stop the users from communicating with him in other formats, including by calling his cellphone.

The Defendant blocked the accounts of the following three Twitter users: Kimberly Fasking, Herbert Hicks, and Heather Lynn Boothe, (collectively, "the Individual Plaintiffs" [2]), on November 4, 2017, March 6, 2016, and November 13, 2017, respectively. In September, 2018, the Individual Plaintiffs filed this First Amendment action challenging the Defendant's blocking of the Individual Plaintiffs' Twitter accounts. The claim that the Defendant's blocking violates the First Amendment because it imposes a viewpoint-based restriction on their participation in a public forum, their right to access official statements, and their right to petition the government for redress of grievances. (*Doc 1, p. 22, 26-27.*) All of Plaintiffs' claims fail as a matter of law.

## LEGAL STANDARD

The Defendant moves for summary judgment under Federal Rule of Civil Procedure 56(a). "A motion for summary judgment is appropriately granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*, 191 F. Supp. 3d 312, 317 (S.D.N.Y. 2016). "The district court must 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " *Charley v. Total Office Planning Servs. Inc.*, 202 F. Supp. 3d 424, 428 (S.D.N.Y. 2016) (quoting *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)). Where the moving party demonstrates the absence of a genuine issue of material fact, "the non-moving party 'must come forward with specific evidence demonstrating the existence of a genuine dispute.' " *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 496 (S.D.N.Y. 2015) (quoting *F.D.I.C. v. Great Am.*

---

[2] The Individual Plaintiffs failed to provide their Twitter account handles, thus, the Defendant cannot verify that their accounts have been blocked and that those accounts remain so.

*Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## ARGUMENT

### I. Plaintiffs Cannot Establish State Action

The Plaintiffs' First Amendment claims fail because the Defendant's decision to block the Individual Plaintiffs from the @JohnHMerrill account was not state action. It is axiomatic that Plaintiffs can maintain a First Amendment claim only by establishing that the challenged conduct is state action. *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009); *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005). Equally clear is that not all conduct of public officials is state action simply by virtue of their profession; officials routinely engage in personal conduct that is not an exercise of state power. *Patterson v. Cty. of Oneida*, 375 F.3d 206, 230 (2d Cir. 2004); *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996). Here, the Defendant's use of his personal Twitter account is among the "acts of officers in the ambit of their personal pursuits [that] are plainly excluded" from state action. *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality)).

The question for the Court is whether the Defendant "exercised power 'possessed by virtue of state law' " when he blocked the Individual Plaintiffs, such that the blocking was "made possible only because [the Defendant] is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("[T]he deprivation must be caused by the exercise of some right or privilege created by the State . . . ."). This determination is "a matter of normative judgment," as "no one fact can function as a necessary condition across the board for finding state action," *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

This inquiry must be applied carefully in relation to the Defendant, whose uniquely prominent constitutional position could be misread to suggest that state power permeates his every action. There can be no question, though, that even prominent public officials engage in personal conduct, whether in public or private, that involves no exercise of state power. *Cf. Zherka v. DiFiore*, 412 F. App'x 345, 347 (2d Cir. 2011) (district attorney's telephone call to newspaper complaining about an article not state action); *Colombo v. O'Connell*, 310 F.3d 115, 118 (2d Cir. 2002) (per curiam) (school superintendent's letter, written by a private lawyer, threatening to file libel suit not state action); *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) ("[S]ome actions by a judge are taken without any relationship to the judge's office or authority, and therefore are not taken under color of law."); *see also, e.g., Van Orden v. Perry*, 545 U.S. 677, 723 (2005) (Stevens, J., dissenting) ("[W]hen public officials deliver public speeches, we recognize that their words are not exclusively a transmission from *the* government because those oratories have embedded within them the inherently personal views of the speaker[.]" (emphasis in original)). The Defendant, like other public officials, routinely engages in conduct that is not state action, whether that might be giving a toast at a wedding or giving a speech at a fundraiser.

Here, the Defendant does not operate his personal Twitter account by virtue of state law, nor is his use of the @JohnHMerrill Twitter account a right conferred by the Office of Secretary of State. Twitter is a private platform, run by a private company, and it structures the interactions of its users on its own terms. The Defendant established the @JohnHMerrill account in 2009, and has used the account prior to his 2010 to 2014 service as a former Republican member of the Alabama House of Representatives, District 62; and continued to use the account after his inauguration as Alabama's 53rd Secretary of State; and, will be free to use it after he leaves

office. Throughout, his use of the account has been governed by Twitter's own structural limitations; any features he may or may not use are created by Twitter and shared by every other user. *See Carlos v. Santos*, 123 F.3d 61, 65-66 (2d Cir. 1997) (finding no state action where "[a]ny citizen may perform [the challenged] acts"). The blocking feature, for example, is one several tools Twitter provides to allow users to customize their interaction with other users and to curate the information that they consume. And the Defendant's decisions about who to interact with and what information to consume (what newspapers to pick up, what news programs to watch, what accounts to follow or block) are not state action.

To be sure, the Defendant's account identifies his office, and his tweets often are "re-tweets" from the official twitter account for the Office of Secretary of State @alasecofstate, of official statements about the policies of his administration.  But the fact that the Defendant may announce the "actions of the state" through his own personal Twitter account does not mean that all actions related to that account are attributable to the state. Public officials may make statements about public policy - and even announce a new policy initiative - in a variety of settings, such as on the campaign trail or in a meeting with leaders of a political party. The fact that an official chooses to make such an announcement in an unofficial setting does not retroactively convert into state action the decision about which members of the public to allow into the event. Similarly, the Defendant's decision to block Twitter users on his personal account is not properly considered state action.

**II. Plaintiffs' First Amendment Claims Fail Because Blocking Twitter Does Not Implicate, Much Less Violate, The Public Forum Doctrine**

As is discussed in more detail below, the Plaintiffs cannot establish a violation of their First Amendment rights. Their principal claim is that the Individual Plaintiffs have been denied access to a "public forum" because of viewpoint-based discrimination. They have not. Even

7

assuming that the Defendant's decision to block the Individual Plaintiffs from the @JohnHMerrill account was state action, the Defendant's use of that account would be government speech, not action that is subject to forum analysis. The Defendant uses the account for *his* speech, not as a forum for the private speech of others. And his decision to block certain users allows him to choose the information he consumes and the individuals with whom he interacts - expressive choices that public officials retain the right to make, even when those choices are made on the basis of viewpoint. This Court should resist the Plaintiffs' invitation to extend forum analysis to the Defendant's Twitter account solely based on the way Twitter - a private company - has structured its website. The Defendant had no role in structuring the conversations among Twitter users, let alone an intent to create a forum for private expression.

### A. If the Defendant's Use of Twitter Is State Action, Then It Is Government Speech

As discussed above, the Defendant's private Twitter account is a tool through which he communicates with people of his choosing. The Office of the Secretary of State maintains an official Twitter account the Plaintiffs can view, and through which they can comment. The Plaintiffs appear to contend that their right to petition the government includes the right to both view and comment on not only the Office of the Secretary of State's public Twitter account @alasecofstate, but also the Defendant's private account @JohnHMerrill. This is not the case. Applied outside of the digital world, the fallacy of this argument becomes apparent: a public official does not engage in state action every time he has a private conversation. *See Van Ort v. Estate of Stanewich*, 92 F. 3d 831, 835-36 (9th Cir. 1996).

Even if the Defendant's use of his private Twitter account was state action, the account is a tool for him to speak, not a forum for private speech. It is well-established that "government statements," along with "government actions . . . that take the form of speech," "do not normally

8

trigger the First Amendment rules designed to protect the marketplace of ideas." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245-46 (2015). "A government entity has the right to speak for itself," "to say what it wishes," and "to select the views that it wants to express." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-68 (2009) (citations and internal quotation marks omitted). In determining whether something constitutes government speech, the Supreme Court has considered three factors: (1) the historical use of a particular medium for government communication; (2) whether the public can reasonably identify the speaker; and (3) the government's control over the expressive content. *See Walker*, 135 S. Ct. at 2247.

The Ninth Circuit addressed the issue of government speech in *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000). After school staff created a bulletin board "on which faculty and staff could post materials related to Gay and Lesbian Awareness Month," plaintiff, a teacher, responded by creating his own bulletin board challenging the acceptance of homosexuality. *Id*. at 1006-07. The school forced plaintiff to remove his materials. The court rejected plaintiff's argument that the bulletin boards were "school-sponsored or imprimatur speech in a nonpublic forum," which would need to be examined "through a viewpoint neutrality microscope." *Id*. at 1011. Instead, the court noted that the school "had authority over the bulletin boards' content at all times," so the rejection of certain material was "the school board itself either choosing not to speak or speaking through the very act of removal." *Id*. at 1012.

Here, like in *Downs*, "[w]e do not face an example of the government opening up a forum for either unlimited or limited public discussion. Instead, we face an example of the government opening up its own mouth." *Id.* The Defendant's private Twitter account is "an expressive vehicle" for his personal beliefs. *Id*. While social media may not be a historic medium, "[t]he

9

absence of historical evidence can be overcome by other indicia of government speech." *Mech v. Sch. Bd. of Palm Beach Cty. Fla.*, 806 F.3d 1070, 1076 (11th Cir. 2015) (noting that it would have little difficulty classifying school board messages posted on Facebook or Twitter as government speech). The Defendant's private Twitter account is solely identified with him, and he controls the content, satisfying the remaining factors of what constitutes government speech. *See Walker*, 135 S. Ct. at 2247.  The First Amendment "does not give every outside individual or group a . . . right to play ventriloquist," simply because the Defendant has chosen to speak. *Downs*, 228 F.3d at 1013; *see also United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 204 (2003) ("the government has broad discretion to make content-based judgments in deciding what private speech to make available to the public").

Just as government speech need not be viewpoint neutral, viewpoint neutral consumption of speech is similarly not required. The Supreme Court has long recognized that the counter balance to free speech is "[t]he recognizable privacy interest in avoiding unwanted communication." *Hill v. Colorado*, 530 U.S. 703, 716 (2000). "[N]o one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970). Government officials, like individuals, have an interest in controlling the flow of information to them. They are similarly, not required to consider all ideas. *See Knight*, 465 U.S. at 288 ("A person's right to speak is not infringed when government simply ignores that person while listening to others."). The freedom of government officials to make choices regarding who they communicate with and listen to does not infringe upon anyone's constitutional rights.

Finally, in addition to having no right to control either the Defendant's speech or his consumption of speech, the Plaintiffs do not have a constitutional right to access this information. The Plaintiffs have "no constitutional right to obtain" even public records. *See*

*McBurney v. Young*, 569 U.S. 221, 233 (2013). "The constitution itself is [not] a Freedom of Information Act." *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (plurality opinion). Therefore, the Plaintiffs do not have a First Amendment right to access even government speech. *See Los Angeles Police Dept. v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40 (1999) (noting that a state could completely deny access to certain state-held information "without violating the First Amendment").

The Plaintiffs have no First Amendment right to communicate through the Defendant's private Twitter account. They have no constitutional right to force the Defendant to listen to their comments. And they have no constitutional right to view everything the Defendant says. Ultimately, the First Amendment does not give the Plaintiffs a right to engage with the Defendant through his private Twitter account, so the Court should dismiss the Plaintiffs' right to petition claim.

### B. The Public Forum Doctrine Is Inapplicable Here

Instead of treating the @JohnHMerrill account as a channel for the Defendant's speech, Plaintiffs urge the Court to view the account as if it were a "public forum." But the " 'forum-based' approach" that courts employ to evaluate speech restrictions on government property is inapplicable here for at least two reasons. *See Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010). First, the Plaintiffs cannot establish that the Defendant's Twitter account is properly considered government property from which private individuals can speak. Second, the forum-based approach should not be extended when, as here, the Defendant has not taken steps to convert the @JohnHMerrill account into a forum for the speech of other Twitter users.

The forum-based approach on which Plaintiffs rely "divides government property into three [main] categories - the traditional public forum, the designated public forum, and the

nonpublic forum." *Byrne*, 623 F.3d at 53. A traditional public forum is a place that "by long tradition or by government fiat ha[s] been devoted to assembly and debate," like public streets and parks. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). The government may impose "[r]easonable time, place, and manner restrictions" on speech in a traditional public forum, but "any restriction based on the content of the speech must satisfy strict scrutiny," and "restrictions based on viewpoint are prohibited." *Summum*, 555 U.S. at 469. A designated public forum is "property that the State has opened for expressive activity by part or all of the public." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). Speech restrictions in a designated public forum are "subject to the same limitations as [those] governing a traditional public forum." *Id*. Finally, "public property not traditionally open to public expression or intentionally designated by the government as a place for such expression" generally is considered a nonpublic forum. *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004). The government may restrict speech in a nonpublic forum "so long as the restriction is reasonable and viewpoint-neutral." *Byrne*, 623 F. 3d at 53. For the reasons discussed below, this Court must reject the Plaintiffs' argument that the Court view the @JohnHMerrill account as if it were a "public forum."

But before even reaching this framework for evaluating restrictions on speech in these forums, the Court must make a threshold determination whether forum analysis applies. The Supreme Court repeatedly has cautioned that "the public forum doctrine should not be extended in a mechanical way" to contexts that are "very different" from the "streets and parks" where the doctrine first arose. *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 672-73 (1998); *see also Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 749 (1996) (plurality) ("[W]e are wary of the notion that a partial analogy in one context, for which [courts]

12

have developed doctrines, can compel a full range of decisions in . . . new and changing area[s]."). This Court should decline to extend the forum-based approach to this new context for two reasons.

First, Plaintiffs cannot establish that the Individual Plaintiffs seek "access to government-owned property for purposes of expression." *Travis v. Owego-Apalachin Sch. Dist.*, 927 F. 2d 688, 691-92 (2d Cir. 1991); *see also W. Farms Assocs. v. State Traffic Comm'n of State of Conn.*, 951 F. 2d 469, 473 (2d Cir. 1991) ("[P]ublic forum analysis applies only where a private party seeks access to public property, such as a park, a street corner, or school auditorium, in order to communicate ideas to others."). Such "property" can be a defined physical space, like a public park, or a more "metaphysical" space, like the platform a university provides through a student activities fund. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 830 (1995). To "define the nature of the property at issue," *Zalaski v. City of Bridgeport Police Dep't*, 613 F. 3d 336, 341 (2d Cir. 2010), the Court must focus on "the access sought by the speaker." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985).

The Plaintiffs suggest that the "public forum" to which they seek access is the @JohnHMerrill account itself. But, as explained *supra* in Section II.A, the Defendant uses the account for his own speech on his own timeline, not as a place for the private expression of others. When other individuals speak about the Defendant on Twitter, they do so through their own accounts and posts on their own timelines. To the extent that their speech extends to other places on Twitter, it does so according to terms set by the company, not the government. *cf. Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 569 (1972) ("[P]roperty [does not] lose its private character merely because the public is generally invited to use it for designated purposes."). To conclude that the Defendant's own account is a public forum for private speech merely because

13

other users may post tweets replying to him would transform any public appearance by a government official into a public forum on government property, and thereby subject the official's choices to a prohibition on viewpoint-based distinctions. If that were the case, then a congressman would be prohibited from pre-screening questions at a symposium hosted by a non-profit. Similarly, a senator could not choose to be introduced by a member of the college Democrats, rather than a member of the college Republicans, at a campus-wide event at a private university. This Court should seek to avoid such incongruous results.

Second, even if the Defendant's Twitter account is considered "property" for these purposes, the Court should decline Plaintiffs' invitation to graft public-forum doctrine onto a social media account ill-suited to traditional forum principles. *See Forbes*, 523 U.S. at 673 (analyzing whether forum analysis is "compatible with the intended purpose of the property" (quoting *Perry Ed. Ass'n.*, 460 U.S. at 49). In *Forbes*, the Court explained that subjecting public broadcasters to forum analysis "would be antithetical, as a general rule, to the discretion that stations and their editorial staff must exercise." *Id.*; *see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 585 (1998). And in *United States v. American Library Association, Inc.*, 539 U.S. 194 (2003), a majority of the Court found that forum analysis was "incompatible with the discretion that public libraries must have to fulfill their traditional missions." *Id.* at 205 (plurality); *see also id.* at 215-16 (Breyer, J., concurring in the judgment)(agreeing with plurality's determination that "the 'public forum' doctrine [was] inapplicable").

This focus on a property's intended purpose is necessary because "[the] government 'does not create a public forum by inaction or by permitting limited discourse, but only by *intentionally* opening a nontraditional forum for public discourse.' " *Walker*, 135 S. Ct. at 2250 (quoting *Cornelius*, 473 U.S. at 802) (emphasis added). Even for nonpublic forums, the

14

government must take some steps to "reserve eligibility for access to the forum to a particular class of speakers." *Forbes*, 523 U.S. at 679-80. For instance, in *American Library Association*, the Supreme Court rejected a challenge to a statute that required public libraries to install software that blocks obscene images and child pornography in order to receive federal funds. 539 U.S. at 199 (plurality). A plurality of the Court declined to apply forum analysis because "[a] public library does not acquire Internet terminals in order to create a public forum for Web publishers to express themselves, any more than it collects books in order to provide a public forum for the authors of books to speak." *Id*. at 206. Instead, a library provides internet access to further its mission, "not to 'encourage a diversity of views from private speakers.' " *Id*. (quoting *Rosenberger*, 515 U.S. at 834).

In this case, there is no indication that the government has taken steps to make the @JohnHMerrill account a forum for private speakers. The Defendant established the account as a private citizen in 2009 - more than six years before he was elected to the Office of the Secretary of State. He posted messages on Twitter frequently prior to his election, and his use of the @JohnHMerrill account as a means of communicating his views has been well documented. Even if the content of the tweets on the @JohnHMerrill account may have shifted over time, there is nothing in the record to suggest that, since the inauguration, the Defendant has opened up his account or otherwise taken affirmative steps to provide a forum for private speech. Absent evidence of such intent, the Court should not treat the @JohnHMerrill account as a forum.

Indeed, it is a mistake to analyze the Defendant's decision at issue in this case - to use the Twitter account he created as a private citizen to block individuals on a private social media platform - "in terms of a doctrine rooted in the government's historic regulation of speech, by private citizens, on real, public property." *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 334 (1st

15

Cir. 2009); *see also Forbes*, 523 U.S. at 674 (warning against giving the public forum doctrine "sweeping application" because "courts 'would be required to oversee far more of the day-to-day operations of broadcasters' conduct' " (quoting *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 127 (1973))). Instead of applying the "highly strained analogy" of the public forum, *Sutliffe*, 584 F.3d at 334, the better course is to treat the @JohnHMerrill account for what it most plainly is: the speech of the Defendant participating in a privately run forum, not the government managing the participation of others in a public one.

### III. Plaintiffs' First Amendment Claims Fail As a Matter of Law And Are Meritless

#### A. The Plaintiff's First Amendment claims fail as a matter of law.

The Individual Plaintiffs contend that they have a right to follow the @JohnHMerrill account as a channel for petitioning the government and as a means of accessing official statements. Neither claim has merit. First, blocking the Individual Plaintiffs from following the @JohnHMerrill account on Twitter does not abridge "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., amend. I. "[T]he rights of speech and petition share substantial common ground." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). As such, courts have often held that a Petition Clause claim cannot exceed the scope of a claim grounded in the First Amendment's Speech Clause. *See, e.g., McDonald v. Smith*, 472 U.S. 479, 485 (1985) ("[T]here is no sound basis for granting greater constitutional protection to statements made in a petition to the [Defendant] than other First Amendment expressions.").

No "special concerns," *Guarnieri*, 564 U.S. at 389, warrant a distinct Petition Clause analysis in this case. The Petition Clause most clearly "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Id.* at 387; *see also W. Farms Assocs.*, 951 F.2d at 474 ("The First Amendment right to petition does

include a right of access to the courts."). Plainly, no such forums are at issue here. In any event, the Petition Clause, like the other clauses of the First Amendment, does not create an entitlement to use Twitter to communicate with the government. That is because "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [an] association and bargain with it." *Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979); *see also Knight*, 465 U.S. at 285 (explaining that the right to petition does not "require government policymakers to listen or respond to individuals' communications on public issues."). Plaintiffs therefore have no free-standing Petition Clause claim.

Second, and for similar reasons, the First Amendment does not create a right to follow the @JohnHMerrill account as a means of accessing official information. *See Smith*, 441 U.S. at 465. Even if such a right did exist, it would not be at issue here because the Individual Plaintiffs have the same ability to view tweets from the @JohnHMerrill account as the average member of the general public. All that is required to view the Defendant's tweets is to visit the @JohnHMerrill page via an internet browser that is not signed in to Twitter. No First Amendment violation can exist under these circumstances.

**B. The Plaintiffs' First Amendment Claims Are Also Meritless.**

Finally, even if the Court were to determine the Defendant's personal Twitter account to be a public forum, the Defendant's actions in barring access of the Individual Plaintiffs to his account was not the result of viewpoint-based exclusion in violation of the free speech clause. "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral. (*Cornelius*, 473 U.S. at 806, 105 S.Ct. 3439.)" *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 575 (S.D.N.Y. 2018). Here, the Defendant

17

engaged conversationally with the Plaintiff Kimberly Fasking via interactive tweets in a good faith effort to answer her concerns regarding the 2017 Special Election for the United States Senate race.  (*Doc. 1, p. 23*.) But Fasking used the social media platform for repetitive questions which did not seek answers or further a discussion but merely served to harass the Defendant. (*Id.*)  Similarly, Plaintiff Herbert Hicks used the Twitter platform to harass and annoy the Defendant, (*Doc. 1, p. 24*), and Plaintiff Heather Boothe used the Defendant's interactive platform to disseminate misleading information to other users, then later claimed she was joking. (*Doc. 1, p. 25.*)   Not surprisingly, after being barred from the Defendant's personal account, none of the Individual Plaintiffs have sought access via any of the four official social media and digital platforms that the Office of the Secretary of State maintains, i.e., website, Twitter account, Facebook, or Instagram.  The blocking of the Individual Plaintiffs, which resulted from their tweets - which the Defendant deemed to be disruptive or personal attacks - were viewpoint-neutral, therefore permissible and withstand First Amendment scrutiny.

## CONCLUSION

For these reasons, the Defendant respectfully requests that the Court grant his motion and enter judgment for the Defendant on all claims.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL
By:

/s/ Madeline H. Lewis
Madeline H. Lewis
Benjamin H. Albritton
Assistant Attorneys General
Counsel for Defendant
Honorable John H. Merrill

ADDRESS OF COUNSEL:

Office of the Attorney General
General Civil Litigation and
Administrative Law Division
501 Washington Avenue
Montgomery, AL 36104
Office: (334) 353-4840
Fax: (334) 242-2433
mlewis@ago.state.al.us
balbritton@ago.state.al.us

## CERTIFICATE OF SERVICE

I certify that I have on November 26, 2018, electronically filed the foregoing pleading with the Clerk of the Court, using the CM/ECF filing system which will send notification of the same to the following:

> Brock Boone
> Randall C. Marshall
> ACLU of Alabama
> P.O. Box 6179
> Montgomery, AL  36106
> bboone@aclualabama.org
> rmarshall@aclualabama.org
>
> Steven P. Gregory
> Gregory Law Firm, P.C.
> 2700 Corporate Drive
> Suite 200
> Birmingham, AL  35242
> steve@gregorylawfirm.us
>
> M. Virginia Buck
> Attorney at Law
> PO Box 2501
> Tuscaloosa, AL  35403
> bucklaw@charter.net

/s/ Madeline H. Lewis
Madeline H. Lewis
Assistant Attorney General