## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

KIMBERLY FASKING                    )
& HERBERT HICKS, HEATHER            )
BOOTH                               )
                                    )
                                    )
Plaintiffs,                         )
                                    )          Case No. 2:18-cv-00809-SRW
    vs.                             )
                                    )
JOHN H. MERRILL, Alabama            )
Secretary of State, in his official capacity, )
                                    )
Defendant                           )

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

COME NOW THE PLAINTIFFS in the above-styled action and offer the

following response to the Defendant's Motion for Summary Judgment.

## INTRODUCTION

This action seeks injunctive relief against John Merrill ("Merrill") for his

blocking of the Plaintiffs on the @JohnHMerrill Twitter account in contravention

of the First Amendment to the United States Constitution.

Now, through his filing of an unsupported and legally-insufficient Motion

for Summary Judgment, Doc. 12 (hereafter "Merrill's MSJ" or "the Motion"), his

first responsive pleading in this case, Merrill seeks to "block" the Plaintiffs once again, this time in contravention of the Federal Rules of Civil Procedure.

The Motion is premature, unsupported by a single fact of record, legally insufficient, and is due to be denied.  What is more, Plaintiffs have not had adequate time for discovery.  The Motion is due to be denied on the merits (or, stated differently, on its lack of merit), but in all events, Plaintiffs respectfully submit that they should be afforded adequate opportunity to conduct discovery. *See* Rule 56(d), Fed.R.Civ.P. and attached declaration of counsel.

Federal Rule of Civil Procedure 56(b) allows a motion for summary judgment to be filed "at any time until 30 days after the close of all discovery." Rule 56(b), Fed.R.Civ.P.  But, "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014) (quoting Fed. Rule Civ. Proc. 56(a)).  Further, "[i]n making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970)); "When ruling on a motion for summary judgment, 'we resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor.'" *Travelers Property Cas. Co. of America v. Moore*, 763

F.3d 1265, 1268 (11th Cir. 2014) (quoting *Layton v. DHL Express (USA), Inc*., 686

F.3d 1172, 1175 (11th Cir. 2012)).

It is important to note that Merrill's Motion for Summary Judgment is

copied and pasted, almost verbatim, from the government's Motion for Summary

Judgment in *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F.

Supp. 3d 541, 572 (S.D.N.Y. 2018), including headings, with only minor changes

such as the names of the parties and the offices held by the respective defendants.

*See* Exhibit A.  However, in *Knight*, the plaintiffs and defendants had already

worked out a joint stipulation of facts before the government defendants moved for

summary judgement; in fact, the case was submitted on cross-motions for

summary judgment by the parties.  Here, Merrill has not even been in contact with

Plaintiffs to determine whether the parties can agree on relevant material facts.

Furthermore, in *Knight*, after the parties worked out a joint stipulation of

facts, the government defendants still lost their motion for summary judgement.

*Knight*, 302 F. Supp. 3d at 572.  In *Knight*, the district court found that President

Trump's conduct in blocking certain individuals on his @realDonaldTrump

Twitter account constituted state action which violated the First Amendment rights

of the *Knight* plaintiffs.  Merrill has made no attempt to distinguish this case from

*Knight*[1], and the well-reasoned analysis of the district court in that case is fully applicable to and dispositive of the arguments made in Merrill's Motion for Summary Judgment.

In the present case, taking as true all factual allegations asserted in the Complaint[2] and resolving all ambiguities in favor of the Plaintiffs, Merrill's Motion for Summary Judgment is due to be denied since he is not entitled to judgment as a matter of law.

# I. MERRILL'S ARGUMENT THAT PLAINTIFFS CANNOT ESTABLISH STATE ACTION IS UNPERSUASIVE

Merrill argues that the Plaintiffs cannot establish a violation of the First Amendment because Merrill's "decision to block the Individual Plaintiffs from the @JohnHMerrill account was not state action." (Merrill's MSJ, p. 5). Merrill argues, without placing any evidence before the Court,

> Here, the Defendant does not operate his personal Twitter account by virtue of state law, nor is his use of the @JohnHMerrill Twitter

---

[1] At one point in his Motion, Merrill actually cites favorably to *Knight*. (Merrill's MSJ, p. 17). Merrill apparently concedes, therefore, that *Knight* is persuasive authority this Court should look to for guidance in resolving the legal issues in this case.

[2] Merrill offers no basis for the factual assertions in his memorandum. Consequently, the only "facts" currently before the Court are those pled by Plaintiffs in their Complaint. *See, e.g.*, *Thompson v. City of Clio*, 765 F. Supp. 1066, 1069 (M.D. Ala. 1991) ("The movant need not present affidavits or new evidence of its own to meet its initial burden, but may premise its summary judgment motion on an attack on the opponent's evidence."), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Merrill has neither offered his own evidence nor attacked the Plaintiffs' evidence.

account a right conferred by the Office of Secretary of State. Twitter
is a private platform, run by a private company, and it structures the
interactions of its users on its own terms. The Defendant established
the @JohnHMerrill account in 2009, and has used the account prior to
his 2010 to 2014 service as a former Republican member of the
Alabama House of Representatives, District 62; and continued to use
the account after his inauguration as Alabama's 53rd Secretary of
State; and, will be free to use it after he leaves office.

Merrill's MSJ, p. 6-7.

Not only is the claim unsupported by facts, these are the same arguments
that were rejected by the district court in *Knight* when it found that President
Trump had violated the First Amendment rights of the plaintiffs in blocking them
from the @realDonaldTrump Twitter account.  The district court found that
President Trump's "reliance on the President's establishment of the account in
2009, Stip. ¶32—well before his election and inauguration as President—is
unpersuasive." *Knight*, 302 F. Supp. 3d at 569.  The court explained,

To the extent forum analysis applies, "[t]he past history of
characterization of a forum may well be relevant; but that does not
mean a present characterization about a forum may be disregarded."
*Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 77 (1st Cir. 2004) …
Indeed, the entire concept of a <u>designated</u> public forum rests on the
premise that the nature of a (previously closed) space has been
changed.

*Id*. (emphasis in original).

The court concluded,

Here, the President and Scavino's ***present use*** of the
@realDonaldTrump account weighs far more heavily in the analysis
than the origin of the account as the creation of private citizen Donald

> Trump. That latter fact cannot be given the dispositive weight that defendants would ascribe to it. Rather, because the President and Scavino **use the** @realDonaldTrump **account for governmental functions**, the control they exercise over it is accordingly governmental in nature.

*Id*. (emphasis added).

The district court in *Knight* also found that it was unimportant that the blocking feature is provided by Twitter, not the government, and that the feature is available to all users.  After all, it was undeniably Trump, and here, Merrill, who blocked Twitter users.  The court reasoned,

> Defendants correctly argue that blocking is a capability held by every Twitter user, Stip. ¶ 28, but the power to exclude is also one afforded generally to every property owner. … **The context of the property from which the government is excluding, therefore, must factor into the analysis**. No one can seriously contend that a public official's blocking of a constituent from her purely personal Twitter account— one that she does not impress with the trappings of her office and does not use to exercise the authority of her position—would implicate forum analysis, but those are hardly the facts of this case.

*Id*. at 568 (emphasis added).

Similarly, in *Davison v. Randall*, No. 17-2002/17-2003, 2019 WL 114012 (4th Cir. Jan. 7, 2019), the Fourth Circuit found that a county official acted under color of law when she deleted a constituent's comment from the Facebook page she administered and temporarily blocked him from the page.  The Chair of the Loudoun County, Virginia, Board of Supervisors set up a Facebook page titled "Chair Phyllis J. Randall" shortly before she took office. *Id*. at *1. She used the

page to post about her trips and meetings in furtherance of county business, to advise the public regarding official actions taken by the Board, and to address other matters related to her official responsibilities. *Id*. at *2. She also sometimes posted about personal matters "such as her affection for the German language or pride in becoming an organ donor." *Id*. at *1, *2. Members of the public would post comments on the page thanking Randall for her service, offering feedback on various issues, inquiring about constituent-specific issues, and sometimes criticizing the Board or Randall for actions taken in their official capacities. *Id*. at *1.

The plaintiff was banned from the page for 12 hours after he wrote a post accusing Board members of "taking kickback money." *Id*. at *3. The plaintiff brought suit for declaratory and injunctive relief. *Id.* Randall moved for summary judgment, which was denied by the district court "concluding that the plaintiff's evidence established a material dispute of fact as to whether the Chair's Facebook Page amounted to a limited public forum and whether Randall acted under color of state law in banning the plaintiff from the Chair's Facebook Page." *Id.* at *4.

In affirming the district court's conclusion that Randall acted under color of law, the Fourth Circuit noted that Randall used the page "to further her duties as a municipal official" by utilizing it to provide information to the public about her official activities and soliciting input from the public on policy issues. *Id*. at *7.

The Court also noted that the post that resulted in the plaintiff's ban related to the Board's official duties; in particular, a potential conflict of interest in approving financial transactions.  The Court explained, "Randall's decision to ban Davison because of his allegation of governmental corruption constitutes black-letter viewpoint discrimination." *Id*. at *12.  The Court concluded, "That Randall's ban of Davison amounted to an effort 'to suppress speech critical of [such members'] conduct of [their] official duties or fitness for public office' further reinforces that the ban was taken under color of state law." *Id*. at *7 (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 524 (4th Cir. 2003).

In the present case, John Merrill has used the @JohnHMerrill account to facilitate carrying out the duties of Secretary of State since being elected to that position. *Compl*., ¶¶32, 34, 37.  Just as the Twitter account in *Knight* "is presented as being 'registered to Donald J. Trump, '45th President of the United States of America, Washington, D.C'", the Twitter account in the present case is presented as being registered to John Merrill, "Representing the People of Alabama as their 53rd Secretary of State." *See Knight*, 302 F. Supp. 3d at 567; *Compl*., ¶32.  As was true in *Knight* and *Davison*, Merrill regularly uses the account for official purposes.  Merrill posts pictures from his official engagements speaking to groups in his capacity as Secretary of State, updates the public on deadlines surrounding

elections, and discusses Alabama election law with Twitter users.  As alleged in

the Complaint,

> Defendant Merrill uses @JohnHMerrill, often multiple times a day, to announce, describe, and defend his policies; to promote his agenda; to announce official decisions; to publicize visits to constituents or fund-raising events or political events; and to challenge media organizations whose coverage he believes to be unfair. Defendant Merrill sometimes uses the account to announce official decisions and policies before those decisions and policies are announced through other official channels. As of the date of this filing, Defendant Merrill had tweeted over 12,000 times.

*Compl.*, ¶34.

Merrill also uses the account to engage with individuals who use the John

Merrill Twitter account to communicate with Merrill in his capacity as Secretary of

State, or to publicly criticize or praise him or his policies.  For instance, on August

15, 2017, Merrill responded to a voter's inquiry on the John Merrill account as to

why she had been placed on the inactive voter list. *Compl.*, ¶25.  Merrill explained

the procedure to her for being placed back on the active voter list, and he

contended that she had been put on the inactive list because two cards had been

sent to her home that had not been returned. *Id.*  On August 29, 2017, Merrill

tweeted, "It is always good to meet community leaders like Karen Jones from

Montgomery who stopped by the office today to pick up a number of voter

registration applications so she can encourage people to become registered voters.

Please remember to use Vote For Alabama app when possible!" *Compl.*, ¶17.

Merrill used the @JohnHMerrill account in August, 2018 to inform the former Mayor of Brighton, "We are working with the District Attorney, Attorney General, and federal prosecutors on your case. You can run, but you can't hide[.]" *Compl.*, ¶24.[3]

Further, the posts that resulted in the ban of each of the Plaintiffs in the present case dealt with voting, elections, and Merrill's performance of his official duties as Secretary of State. *Compl.*, ¶¶41, 44, 45.

As noted above, Merrill has made no effort to distinguish this case from *Knight* or to distinguish the manner in which he uses the @JohnHMerrill Twitter account from Trump's use of the @realDonaldTrump account notwithstanding the fact that Merrill copied and pasted his Motion for Summary Judgment directly from the government's Motion in *Knight*.  The well-reasoned analysis of the United States District Court for the Southern District of New York in *Knight* is equally applicable here, as is the analysis of the Fourth Circuit Court of Appeals in *Davison*, and Merrill's argument that there is no state action involved in his conduct of blocking users on the @JohnHMerrill Twitter account is unpersuasive.

---

[3] This tweet generated a media response. In an article which can be accessed at www.al.com/news/index.ssf/2018/07/john_merrill_calls_former_brig.html, the journalist writes, "Alabama Secretary of State John Merrill called ex-Brighton Mayor Brandon Dean a 'criminal' during a fiery Twitter exchange on Tuesday despite Dean never being indicted, let alone convicted, of a crime."

Additionally, as discussed above and discussed further below, this is not an appropriate juncture of the case to determine whether or not the conduct of the Defendant constitutes state action. Whether Merrill's actions constitute state action is a fact-intensive inquiry. A determination of whether the conduct of a public official constitutes state action requires "sifting facts and weighing circumstances." *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)). In a case involving the American Civil Liberties Union of Maine and the Governor of Maine's Facebook account, the plaintiffs filed a complaint in August of 2017 because the Governor had blocked the plaintiffs on his Facebook account. *Leuthy v. LePage*, No. 1:17-CV-00296-JAW, 2018 WL 4134628, at *1 (D. Me. Aug. 29, 2018), motion to certify appeal denied, 2018 WL 4955194 (D. Me. Oct. 12, 2018). In October 2017, the Governor filed a motion to dismiss pursuant to Rule 12(b)(6). *Id*. at 2. In August 2018, the district court denied "the Governor's motion because it is premature. The parties to this case do not agree on a basic fact: what exactly is the social media page in question."

Similarly, in the present case, the Parties are apparently in dispute as to whether Merrill has been using the @JohnHMerrill Twitter account in a purely personal manner or whether he uses the account in connection with carrying out his

official duties as Secretary of State.  For these reasons, there can be no finding as a matter of law that Merrill's conduct in this case does not constitute state action.[4]

## II. MERRILL'S ARGUMENT THAT THE PUBLIC FORUM DOCTRINE IS NOT IMPLICATED IS WITHOUT MERIT

Merrill next argues that a forum analysis is inapplicable because his use of his Twitter account constitutes "government speech."  He further argues that his Twitter account is not "government property from which private individuals can speak." (Merrill's MSJ, p. 11).  Neither argument has merit.

### A. MERRILL'S ARGUMENT THAT HIS USE OF TWITTER IS "GOVERNMENT SPEECH" MISSES THE POINT

Merrill argues, "Even if the Defendant's use of his private Twitter account was state action, the account is a tool for him to speak, not a forum for private speech." (Merrill's MSJ, p. 8).  Merrill's argument misses the point because he fails to recognize the relevant "forum."  The Plaintiffs do not seek access to John Merrill's Twitter account or seek to exercise any control over what he tweets or what appears on his timeline.  Rather, they seek access to the interactive space for replies, just as all non-blocked Twitter users enjoy.

The argument urged by Merrill here was presented to, and rejected by, the district court in *Knight*.  There, the district court noted, as an initial matter, that

---

[4] Plaintiffs have adequately pled state action and Merrill has offered no evidence to dispute their allegations.

President Trump's original tweets, as well as his timeline, constituted government speech which was "not susceptible to forum analysis." *Knight*, 302 F. Supp. 3d at 572.  But the court reasoned, "The same cannot be said, however, of the interactive space for replies and retweets created by each tweet sent by the @realDonaldTrump account." *Id*.  The court recognized that the replies are controlled by the users who generate them and "remain the private speech of the replying user." *Id*.

The court reasoned that "the essential function of a given ***tweet's interactive space*** is to allow private speakers to engage with the content of the tweet, Stip. ¶13, which supports the application of forum analysis." *Id*. at 573 (emphasis added).  The court explained, "Ultimately, the delineation of a tweet's interactive space as the putative forum is consistent with the Supreme Court's directive to 'focus[ ] on the access sought by the speaker.'" *Id*. (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801(1985)).  In applying *Cornelius* to the facts before it, the district court reasoned: "When a user is blocked, the most significant impediment is the ability to directly interact with a tweet sent by the blocking user. … [T]hat ability—i.e., access to the interactive space—is therefore best described as the access that the individual plaintiffs seek." *Id*.  The court concluded, "In sum, we conclude that the ***interactive space*** associated with each of

the President's tweets is ***not government speech*** and is properly analyzed under the Supreme Court's forum precedents." *Id.* (emphasis added).

The district court in *Price v. City of New York*, 15 Civ. 5871 (KPF), 2018 WL 3117507 (S.D.N.Y. June 25, 2018), likewise rejected the City's argument that a forum analysis was inapplicable to its conduct in blocking the plaintiff from Twitter accounts maintained by city officials because the accounts constituted "government speech."  In *Price*, the plaintiff used Twitter as a means of protesting the failure of New York's law enforcement to protect her from abuse by her ex-boyfriend, against whom she had obtained a protection from abuse order.  She interacted with the official Twitter feed for the NYPD's 28th Precinct, lodging complaints against the department in replies to tweets from the precinct's official Twitter account.  As a result, the administrator of the Twitter account blocked her. The plaintiff was also blocked by the administrator of the Twitter account for New York City Mayor's Office to Combat Domestic Violence after she posted a series of reply tweets critical of the city's policies toward abuse victims on that Twitter account.

In concluding that the plaintiff had made out a colorable claim for a violation of her First Amendment rights, the court rejected the defendants' arguments that blocking was permitted because the Twitter accounts constituted "government speech."  The district court reasoned,

None of the factors set forth in *Pleasant Grove City*[5] or *Walker*[6]
favors the City Defendants' argument for government speech. Most
importantly, reasonable observers of the official Twitter accounts
would understand that Plaintiff's reply tweets—those that sharply
criticized the City's handling of domestic abuse victims and warning
other victims of the possible consequences of relying on City agencies
for assistance—were not the City's own speech, but were Plaintiff's
alone. These messages emanated from Plaintiff's own Twitter account
and clearly identified Plaintiff (or at least her Twitter account) as the
speaker. The City Defendants cannot credibly suggest that the public
would confuse Plaintiff's posts criticizing the City as being the City's
own speech.

*Price*, 2018 WL 3117507 at *14 (footnotes added).

The Court therefore concluded, "[T]he conduct of [the defendants] in

blocking Plaintiff from the official Twitter accounts cannot be classified as

government speech. It is instead governed by the Free Speech Clause of the First

Amendment." *Id*.

Similarly, in *Davison*, discussed *supra*, the Fourth Circuit rejected the school

board chair's argument that her Facebook page constituted government speech.

The Court pointed out that the argument "fails to recognize the meaningful

difference between Randall's posts to the Chair's Facebook Page and the public

comments and posts she invited in the page's interactive space." *Davison*, 2019

WL 114012 at *11.  The Court conceded, "To be sure, Randall's comments and

curated references on the Chair's Facebook Page to other Pages, personal profiles,

---

[5] *Pleasant Grove City* v. *Summum*, 555 U.S. 460, 469 (2009).
[6] *Walker* v. *Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239 (2015).

and websites amount to governmental speech." *Id*.  But the Court concluded,

"[T]he interactive component of the Chair's Facebook Page—the portion of the

middle column in which the public can post comments, reply to posts, and 'like'

comments and posts—is materially different." *Id*.  The Court reasoned,

"[C]omments and posts by users cannot be mistaken for Randall's own speech

because they identify the posting or replying personal profile or Page, and thereby

distinguish that user from Randall." *Id*.

Similarly, in the present case, John Merrill's own tweets are, without

question, "governmental speech."  But the interactive space associated with those

tweets, which is the access the Plaintiffs in this case seek, is most assuredly not

government speech.  Other Twitters users would have understood that the tweets of

the Plaintiffs in this case, which bore their usernames and clearly identified them

as the author of the tweets, were not the comments of the government.

Accordingly, Merrill's "government speech" argument, like the argument of the

defendants in *Knight* and *Price*, is without merit.

## B. MERRILL'S ARGUMENT THAT THE PUBLIC FORUM DOCTRINE IS INAPPLICABLE IS NOT SUPPORTED BY LAW

Merrill next argues that a forum analysis is inapplicable because

 "Plaintiffs cannot establish that the Defendant's Twitter account is properly

considered government property from which private individuals can speak," and

because "the Defendant has not taken steps to convert the @JohnHMerrill account into a forum for the speech of other Twitter users." (Merrill's MSJ, p. 18).  Neither argument is legally supportable.

These arguments, like Merrill's arguments discussed above, were presented, verbatim, to the district court in *Knight* and were rejected by that court.  In *Knight*, the district court, after concluding that the "forum analysis is appropriately applied to the interactive space associated with a tweet" turned to the question of how to classify the forum in question.  The court noted, "'The Supreme Court has recognized three types of fora across a spectrum of constitutional protection for expressive activity.'" *Knight*, 302 F. Supp. 3d at 573 (quoting *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004)).  The district court set out those three types of forums, as outlined in *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37(1983), as a traditional public forum (such as a park), a designated public forum, and a non-public forum.  In determining that the second category, a designated forum, was most applicable to the interactive space associated with the President's tweets, the district court first set out the applicable law as follows:

> "A second category consists of public property which the state has opened for use by the public as a place for expressive activity." *Perry Educ. Ass'n*, 460 U.S. at 45, 103 S.Ct. 948.[7] "To create a forum of this

---

[7] *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37(1983).

type, the government must intend to make the property 'generally available,' to a class of speakers." *Forbes*,[8] 523 U.S. at 678, 118 S.Ct. 1633 (citations omitted) (quoting *Widmar*,[9] 454 U.S. at 264, 102 S.Ct. 269). "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse," and we "look[ ] to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439.[10]

*Knight*, 302 F. Supp. 3d at 573-574 (footnotes added).

Applying that Supreme Court precedent to the case before it, the court reasoned,

> Here, ***these factors strongly support the conclusion that the interactive space is a designated public forum***. "The @realDonaldTrump account is generally accessible to the public at large without regard to political affiliation or any other limiting criteria," "any member of the public can view his tweets," and "anyone [with a Twitter account] who wants to follow the account [on Twitter] can do so," unless that person has been blocked. Stip. ¶ 36. Similarly, anyone with a Twitter account who has not been blocked may participate in the interactive space by replying or retweeting the President's tweets. Stip. ¶¶ 21, 22, 28, 36. Further, the account— including all of its constituent components—has been held out by Scavino as a means through which the President "communicates directly with you, the American people!" Stip. ¶ 37 (alterations incorporated). And finally, there can be no serious suggestion that the interactive space is incompatible with expressive activity: rather, Twitter as a platform is designed to allow users "to interact with other Twitter users in relation to [their tweets]," Stip. ¶ 13, and users can use Twitter to "petition their elected representatives and otherwise engage with them in a direct manner," <u>Packingham</u>, 137 S.Ct. at 1735. The interactivity of Twitter is one of its defining characteristics, and

---

[8] *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998).
[9] *Widmar v. Vincent*, 454 U.S. 263 (1981).
[10] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985).

indeed, the interactive space of the President's tweets accommodates a substantial body of expressive activity. Stip. ¶¶ 41–43. Taking these factors together, ***we conclude that the interactive space of a tweet from the @realDonaldTrump account constitutes a designated public forum***.

*Id*. at 574-575 (emphasis added) *see also Davison*, 2019 WL 114012 at *12 (finding that the "interactive component of the Chair's Facebook Page amounts to a public forum.").

All of the factors noted in *Knight* are equally present in this case.  The @JohnHMerrill account is open to all members of the public who have a Twitter account and who have not been blocked.  All of these persons may read the tweets, respond to the tweets, read replies, and respond to those replies.  The "[i]nteractivity of Twitter is one of its defining characteristics," and when John Merrill chooses this means of engaging with the public, as opposed to unilaterally issuing a press release, he understands that the platform permits members of the public to interact with that tweet. *Knight*, 302 F. Supp. 3d at 575.  Therefore, the interactive space associated with Merrill's tweets on the @JohnHMerrill account, an account which Merrill regularly uses in his official capacity in carrying out his duties as Secretary of State, is a designated public forum within the meaning of *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983).

## III. MERRILL'S ARGUMENT THAT THE PLAINTIFFS CANNOT SHOW A FIRST AMENDMENT VIOLATION IS WITHOUT MERIT

Merrill's last argument is that there has been no First Amendment violation because the First Amendment is not implicated, and because his blocking of the Plaintiffs was "viewpoint neutral."  Neither argument has merit.

### A. THE PLAINTIFFS HAVE PLEADED FACTS ESTABLISHING A FIRST AMENDMENT VIOLATION

Merrill argues that the First Amendment "does not create an entitlement to use Twitter to communicate with the government" nor does it create an obligation on the part of any government official to "to listen or respond to individuals' communications on public issues." (Merrill's MSJ, p. 17).  However, Merrill confuses an obligation on his part to listen to a Twitter user, which he rightly points out does not exist, with the First Amendment right of the Twitter user to participate in the interactive space associated with the tweets and replies.  As noted by the district court in *Knight*,

> The audience for a reply extends more broadly than the sender of the tweet being replied to, and blocking restricts the ability of a blocked user to speak to that audience. While the right to speak and the right to be heard may be functionally identical if the speech is directed at only one listener, they are not when there is more than one.

*Knight*, 302 F. Supp. 3d at 577.

Nobody is trying to legally force Merrill to listen to them or communicate with them.  As was pointed out in *Knight*, if Merrill does not want to read the

replies of a Twitter user, he can "mute" that person rather than block them. This would prevent Merrill from seeing the tweets of the person in question, but it would still enable the user to view and interact with Merrill's tweets.

> [M]uting allows a user to ignore an account with which the user does not wish to engage. The muted account may still attempt to engage with the muting account—it may still reply to tweets sent by the muting account, among other capabilities—but the muting account generally will not see these replies. Critically, however, the muted account may still reply directly to the muting account, even if that reply is ultimately ignored.

*Knight*, 302 F. Supp. 3d at 576.

Merrill next argues that "the First Amendment does not create a right to follow the @JohnHMerrill account as a means of accessing official information." (Merrill's MSJ, p. 17). Merrill further argues,

> Even if such a right did exist, it would not be at issue here because the Individual Plaintiffs have the same ability to view tweets from the @JohnHMerrill account as the average member of the general public. All that is required to view the Defendant's tweets is to visit the @JohnHMerrill page via an internet browser that is not signed in to Twitter.

Merrill's MSJ, p. 17.

> The district court in *Knight* case rejected this identical argument:

> Thus, even though defendants are entirely correct in contending that the individual plaintiffs may continue to access the content of the President's tweets, Stip. ¶¶ 55–56, … the blocking of the individual plaintiffs has the discrete impact of ***preventing them from interacting*** directly with the President's tweets, Stip. ¶ 54, thereby restricting a real, albeit narrow, slice of speech. ***No more is needed to violate the Constitution***.

*Knight*, 302 F. Supp. 3d at 577 (emphasis added).

Similarly, in the present case, whether or not the blocked users are still able to *view* Merrill's tweets in some manner, they are prevented from ***interacting*** directly with those tweets in the same way as other Twitter users, and "[n]o more is needed to violate the Constitution." *Id*.

## B. MERRILL'S ARGUMENT THAT HIS BLOCKING OF THE INDIVIDUAL PLAINTIFFS WAS VIEWPOINT-NEUTRAL MISUNDERSTANDS THE APPLICABLE LAW

Merrill's last argument is, "[T]he Defendant's actions in barring access of the Individual Plaintiffs to his account was not the result of viewpoint-based exclusion in violation of the free speech clause." Merrill's MSJ, p. 17.
In support of this argument, Merrill relies on *Cornelius*, 473 U.S. at 806, for the proposition, "'Control over access to a ***nonpublic forum*** can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." Merrill's MSJ, p. 17 (emphasis added).

The first problem with this argument is that we are not dealing here with a "non-public forum."  As noted above, the "interactive space of a tweet from the [@JohnHMerrill] account constitutes a ***designated public forum***." *Knight*, at 574-575 (emphasis added).  Even if this were a "non-public forum," Merrill's argument that his blocking is viewpoint neutral is not supported by the law or the facts.

Merrill made the following argument (without placing any facts before the Court) in support of his contention that his blocking is viewpoint neutral:

> Fasking used the social media platform for repetitive questions which did not seek answers or further a discussion but merely served to harass the Defendant. (*Id*. [Doc. 1, p. 23]) Similarly, Plaintiff Herbert Hicks used the Twitter platform to harass and annoy the Defendant, (Doc. 1, p. 24), and Plaintiff Heather Boothe used the Defendant's interactive platform to disseminate misleading information to other users, then later claimed she was joking. (Doc. 1, p. 25).

Merrill's MSJ, p. 18.

The Plaintiffs dispute this characterization of the Plaintiff's tweets. In all events, Merrill's argument misses the point that blocking individuals who post comments with content which he views as annoying or which make him feel harassed is the very definition of content-based regulation of speech.  In *Knight*, the district court noted, as an initial matter,

> Indeed, there is no suggestion that the speech in which the individual plaintiffs engaged and seek to engage fall within the "well-defined and narrowly limited classes of speech," such as ***obscenity, defamation, fraud, incitement, and speech integral to criminal conduct***, "the prevention and punishment of which have never been thought to raise any Constitutional problem." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 791, 131 S.Ct. 2729, 180 L.Ed.2d 708 (2011) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)).

*Knight*, 302 F. Supp. 3d at 565 (emphasis added).

Accordingly, the court found, "We readily conclude the speech in which individual plaintiffs seek to engage is protected speech." *Id*.  The district court

soundly rejected Trump's contention that there was anything "viewpoint neutral" about his blocking of the plaintiffs:

> Even if the interactive space associated with the content of a tweet constituted a nonpublic forum, the exclusion of the individual plaintiffs would not withstand First Amendment scrutiny. … "The blocking of the individual plaintiffs, which *resulted from their 'tweets that criticized the President or his policies,'* Stip. at 1*, is not viewpoint-neutral*, and is therefore impermissible regardless of how the property is categorized under forum doctrine[.]"

*Knight*, 302 F. Supp. 3d at 575 n.22 (quoting *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018) (emphasis added).

Similarly, in *Price*, discussed above, the court first found that it would "likely be inclined to reject the notion that the City's official Twitter pages are nonpublic forums, because by creating the Twitter accounts and interacting with the public, it has opened those forums 'for expressive activity by members of the public.'" 2018 WL 3117507 at *15 (quoting *Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of New York Department of Parks and Recreation*, 311 F.3d 534, 546 (2d Cir. 2002)). However, the court found that "[b]ecause viewpoint discrimination, such as that alleged by Plaintiff in this action, is unlawful in *any* forum subject to the Free Speech Clause, it was unnecessary to determine whether the putative forum was a designated public forum or a non-public forum." *Price*, 2018 WL 3117507 at *16 (emphasis in original).  In finding that the defendants engaged in viewpoint

discrimination in blocking the plaintiff from the Twitter accounts in question, the

court noted,

> The [complaint] sets forth facts suggesting that Plaintiff posted tweets
> in the interactive sections of two Twitter accounts, under her own
> account name and attributed to her alone, that criticized City agencies
> and officials for failing to adequately serve domestic violence victims
> and that warned other victims of the consequences of seeking help
> from City agencies. ***Very shortly after posting the critical tweets,
> [defendants] blocked Plaintiff from the official accounts***. (See FAC
> ¶¶ 102-14). These allegations strongly suggest that [defendants]
> blocked Plaintiff from the official Twitter accounts because of her
> critical comments and to prevent her from publicly criticizing City
> officials in those forums. That is, it appears that [defendants] expelled
> Plaintiff from the official Twitter accounts on the basis of her
> viewpoint.

*Id*. (emphasis added).

Likewise, in *Davison*, the Court found,

> Upon concluding that interactive component of the Chair's Facebook
> Page amounts to a public forum, we would normally need to
> determine whether it constitutes a traditional public forum or
> designated or limited public forum. In the present case, however, we
> need not decide that question because ***Randall's ban of Davison
> amounted to "viewpoint discrimination***," which is "prohibited in all
> forums."

*Davison*, 2019 WL 114012 at \*12 (quoting *Child Evangelism Fellowship of S.C. v.*

*Anderson Sch. Dist. Five,* 470 F.3d 1062, 1067 n.2 (4th Cir. 2006) (emphasis

added).

The Court found, "Put simply, Randall unconstitutionally sought to

'suppress' Davison's opinion that there was corruption on the School Board." *Id*.

The Court noted, "That Randall's action targeted comments critical of the School Board members' official actions and fitness for office renders the banning all the more problematic as such speech 'occupies the core of the protection afforded by the First Amendment.'" *Davison*, 2019 WL 114012 at *11 (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 521 (4th Cir. 2003), quoting in turn *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995)).

Allowing public officials such as Merrill to block individuals from their social media accounts if they post replies which the public officials find "annoying" or "harassing" would run afoul of the very liberties protected by the First Amendment. In *U.S. v. Cassidy*, 814 F. Supp. 2d 574 (D. M.D. 2011), the court found that an interstate stalking statute which prohibited using an Internet blog or real-time information network to "harass" or "cause substantial emotional distress" to a person in another state was an impermissible content-based restriction on protected speech. The court began by noting that "the First Amendment protects speech even when the subject or manner of expression is uncomfortable and challenges conventional religious beliefs, political attitudes or standards of good taste." *Cassidy*, 814 F. Supp. 2d at 581-582. The court continued,

> Indeed, the Supreme Court has consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern.

This is because "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide 'adequate breathing space' to the freedoms protected by the First Amendment."

*Id*. at 582 (quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988), quoting in turn *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

The court also noted, "[T]he Government's Indictment is not limited to categories of speech that fall outside of First Amendment protection—obscenity, fraud, defamation, true threats, incitement or speech integral to criminal conduct. Because this speech does not fall into any of the recognized exceptions, the speech remains protected." *Id*. at 583. In finding the statute to necessarily be a content-based restriction on speech, the court explained, "Typically, a restriction is content-based if it regulates speech based on the effect that speech has on an audience." *Id*. at 584. The court concluded that the statute "amounts to a content-based restriction because it limits speech on the basis of whether that speech is emotionally distressing to [the targeted person]." *Id*. The court distinguished the use of social media from "harassing telephone calls which 'are targeted towards a particular victim and are received outside a public forum.'" *Id*. at 585 (quoting *United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004). The court reasoned, "Twitter and Blogs are today's equivalent of a bulletin board that one is free to

disregard, in contrast, for example, to e-mails or phone calls directed to a victim."[11]

*Id*. at 585-586.  In finding that the statute was not narrowly tailored to a compelling

governmental interest, the court also found it important that the target of the

internet attacks was "an easily identifiable public figure" and that many of the

defendant's statements were related to that public figure's "beliefs and …

qualifications as a leader." *Id*. at 586.  The court concluded,

> Thus, this statute sweeps in the type of expression that the Supreme
> Court has consistently tried to protect. *See e.g., New York Times Co. v.
> Sullivan*, 376 U.S. 254, 271, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)(the
> fundamental importance of the free flow of ideas and opinions on
> matters of public concern is the core of the First Amendment
> Protections, even where speech includes "vehement caustic and
> sometimes unpleasantly sharp attacks.").

*Id*.

See also *Fratiello v. Mancuso*, 653 F.Supp. 775 (D.R.I. 1987) (holding an

ordinance which prohibited making any noise which was "unnecessary" or

"physically annoying" was unconstitutional because it "subordinates the exercise

of First Amendment freedoms to a police officer's entirely subjective

determination of whether an actor's speech is 'unnecessary' and 'annoying.'");

*Saia v. People of State of New York*, 334 U.S. 558, 562 (1948) (striking down

ordinance banning the use of a loud speaker without prior approval because of the

---

[11] As noted above, Merrill can "mute" particular users on Twitter if he does not
want to read their posts, and this would not interfere with the user's ability to
participate in the interactive space associated with Merrill's tweets.

danger that "a permit may be denied because some people find the ideas annoying.").

In the present case, Merrill has not suggested that any of the Plaintiffs have posted speech which would constitute "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct." *Knight*, 302 F. Supp. 3d at 565.[12] Therefore, Merrill cannot block these Plaintiffs based solely on the fact that he finds the content of their tweets "annoying" even if this were a non-public forum.

## C. MERRILL'S BASELESS ASSERTIONS OF FACT SHOULD NOT BE CONSIDERED BY THIS HONORABLE COURT

Merrill's arguments rest on a number of factual assertions which have no evidentiary basis. These assertions should not be considered by this Court in ruling on the Motion for Summary Judgment. *See* footnote 2, *supra*.

For instance, Merrill asserts, without evidence, that he gives out his cellphone number to the public "thereby allowing anybody who desires to contact him directly." Merrill's MSJ, p. 3. Although this assertion is no defense to the Plaintiffs' claims, Plaintiffs do not believe this is Defendant Secretary of State John Merrill's personal cell phone, and Plaintiffs do not believe he regularly

---

[12] There has also been no allegation that the Plaintiffs' tweets violated the terms and conditions imposed by Twitter, which would have disabled their accounts if they had.

answers his decoy cell phone as he asserts.  Only full and fair discovery can test
the truth of such unsupported statements.

Further, Defendant Merrill established the Twitter account at issue while
pursuing public office in 2009, a fact which he admits. *See* Merrill's MSJ, p. 6.

Additionally, Merrill argues that this is his "private Twitter account."
Merrill's MSJ, p. 8.  Yet, Merrill acknowledges that he uses the account to
"announce the 'actions of the state.'" *Id*. at 7.  Indeed, statements about politics,
public policy, and government appear to constitute the sole content of Merrill's
Twitter posts.  Plaintiffs have sedulously searched for Twitter posts about Merrill's
dog, his children, his hobbies, or any other family events to no avail.  There are
none.

Plaintiffs disagree about the circumstances surrounding the blocking of the
Plaintiffs.  Plaintiffs strongly take issue with Merrill's assertion that they were
being disruptive and making personal attacks as Defendant's motion suggests.
Merrill's MSJ, p. 18.  They were doing no such thing.  They were seeking
information and engaging in discussions of government operations and politics.
*See Compl*., ¶¶11-13, 41, 44, 45.

There is, thus, a genuine dispute of material fact, or, more accurately, many
genuine disputes about innumerable material facts.  The Twitter account is public,
not private.  The Secretary of State does not give out his actual private cellphone

number.  The Secretary of State does not regularly respond to his decoy "personal" cellphone.  Defendant established his Twitter account while pursuing public office. Social Media is not inherently "unofficial."  The Secretary of State does not run a private Twitter account to communicate only "with people of his choosing."  Other individuals' replies and comments are not government speech nor are they his personal speech.  There is no agreement surrounding the facts required for the fact intensive inquiry into state action.  Although there remain disputes of material facts, Plaintiffs remain available for meeting with the Defendant to work out stipulated facts to avoid unnecessary discovery, and Plaintiffs also stand ready at the Court's direction to conduct the discovery necessary to place a factual record before the Court.

## IV. THE PLAINTIFFS MUST HAVE THE OPPORTUNITY TO CONDUCT DISCOVERY

As a general rule, summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery. *See Alabama Farm Bureau Mut. Casualty Co. v. American Fidelity Life Ins. Co*., 606 F.2d 602 (5th Cir. 1979), *cert. denied*, 449 U.S. 820 (1980)[13]; *Reflectone, Inc. v. Farrand Optical Co*., 862 F.2d 841, 843 (11th Cir. 1989).

---

[13] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), all decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent upon courts within the 11th Circuit.

In *Hobbs v. United States*, 683 F. App'x 896, 898 (11th Cir. 2017), the Court recently overturned a decision in the Northern District of Alabama after the district judge granted summary judgment for the government defendants.  The Eleventh Circuit reasoned that the "party was not provided a reasonable opportunity to discover information essential to his opposition." *Hobbs*, 683 F. App'x at 898 (quoting *Smith v. Fla. Dep't of Corr.,* 713 F.3d 1059, 1064 (11th Cir. 2013)).

In the present case, the Defendant's Motion is (at best) premature.  Summary judgment "is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition." *Smith v. Fla. Dep't of Corr*., 713 F.3d 1059, 1064 (11th Cir. 2013).  Courts customarily deny motions for summary judgment as premature when discovery over relevant matters is unfinished. *See Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980) (reversing summary judgment entered before discovery had begun); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994); *Miller v. Beneficial Management Corp*., 977 F.2d 834, 845 (3d Cir. 1992) ("[T]he incomplete state of discovery alone should have precluded summary judgment on the merits."); *Evans v. Technologies Applications & Service Co*., 80 F.3d 954, 961 (4th Cir. 1996) ("Summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Iverson v. Johnson Gas Appliance Co*., 172 F.3d 524, 530 (8th Cir.1999) (As a general rule,

"summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'") (quoting *In re TMJ Litig*., 113 F.3d 1484, 1490 (8th Cir. 1997)).

In this case, discovery has not even begun. Defendant Merrill filed his motion before the first hearing, before a discovery conference, and, indeed, without citing to a single admissible document and without offering even one affidavit or declaration.

Plaintiffs here have not had a chance to discover relevant matters. Plaintiffs are willing to, indeed, they expect to, meet with defense counsel and discuss the information that needs to be discovered in a discovery conference. After discovery, conceivably the parties might enter into a joint stipulation of facts. But in his Motion, Defendant has provided no evidence or facts.

## CONCLUSION

For the foregoing reasons, Merrill's Motion for Summary Judgment is due to be denied.

Done, on this the 11th day of January, 2019.


                                        /s/ Brock Boone
                                        Brock Boone

Brock Boone
Randall C. Marshall
ACLU of Alabama
P.O. Box 6179
Montgomery, AL 36106
bboone@aclualabama.org
rmarshall@aclualabama.org

Steven P. Gregory
Gregory Law Firm, P.C.
2700 Corporate Drive
Suite 200
Birmingham, AL 35242
steve@gregorylawfirm.us

M. Virginia Buck
Attorney at Law
PO Box 2501
Tuscaloosa, AL 35403
bucklaw@charter.net

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have on January 11, 2019, electronically filed the foregoing pleading

with the Clerk of the Court, using the CM/ECF filing system which will send

notification of the same to the following:


Benjamin H. Albritton
Office of the Attorney General
General Civil Litigation and
Administrative Law Division
501 Washington Avenue
Montgomery, AL 36104
Office: (334) 353-4840
Fax: (334) 242-2433
balbritton@ago.state.al.us

Madeline H. Lewis
Office of the Attorney General
General Civil Litigation and
Administrative Law Division
501 Washington Avenue
Montgomery, AL 36104
Office: (334) 353-4840
Fax: (334) 242-2433
mlewis@ago.state.al.us


                                        /s/ Brock Boone
                                        Brock Boone