**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

KIMBERLY FASKING, HERBERT HICKS, &
HEATHER BOOTH,

*Plaintiffs*,

v.

JOHN H. MERRILL,
Alabama Secretary of State, in his official capacity

*Defendant*.

No. 2:18-cv-00809-JTA

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Brock Boone
Randall C. Marshall
ACLU of Alabama
P.O. Box 6179
Montgomery, AL 36106
bboone@aclualabama.org
rmarshall@aclualabama.org

Steven P. Gregory
Gregory Law Firm, P.C.
2700 Corporate Drive
Suite 200
Birmingham, AL 35242
steve@gregorylawfirm.us

M. Virginia Buck
Attorney at Law
13112 Martin Rd. Spur
Northport, AL 35473
bucklaw@charter.net

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION..................................................................................................1

ARGUMENT.........................................................................................................2

I. MERRILL'S ARGUMENT THAT PLAINTIFFS HAVE NOT
    ESTABLISHED STATE ACTION IS CONTRARY TO APPLICABLE
    CASE LAW..........................................................................................................2

II. MERRILL'S ARGUMENT THAT THE PUBLIC FORUM DOCTRINE
    IS NOT IMPLICATED IS WITHOUT MERIT…………………………….....8

    A. MERRILL'S ARGUMENT THAT *HIS* USE OF TWITTER IS
        "GOVERNMENT SPEECH" MISSES THE POINT…………………...…..8

    B. MERRILL'S ARGUMENT THAT THE PUBLIC FORUM DOCTRINE
        IS INAPPLICABLE BECAUSE THE ACCOUNT IS NOT
        "GOVERNMENT PROPERTY" IS NOT SUPPORTED BY ANY
        APPLICABLE CASES……………………………………………….…12

III. MERRILL'S ARGUMENT THAT THE PLAINTIFFS HAVE NOT
    SHOWN A FIRST AMENDMENT VIOLATION IS WITHOUT MERIT….14

    A. MERRILL'S ARGUMENT THAT THE FIRST AMENDMENT IS
        NOT IMPLICATED FAILS TO UNDERSTAND THE ISSUES…………15

    B. MERRILL'S ARGUMENT THAT HIS BLOCKING OF THE
        INDIVIDUAL PLAINTIFFS WAS VIEWPOINT NEUTRAL IS
        CONTRARY TO THE STIPULATED FACTS, IS UNSUPPORTED
        BY ANY EVIDENCE, AND MISUNDERSTANDS THE APPLICABLE
        LAW………………………………………………….………………..17

III. MERRILL'S ATTEMPT TO DISTINGUSH *KNIGHT* AND *GARNIER* IS
    UNPERSUASIVE……………………………………………….…………22

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Campbell v. Reisch,*
No. 2:18-CV-4129-BCW, 2019 WL 3856591 (Aug. 16, 2019) ................................. 6, 7, 13, 20

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
473 U.S. 788 (1985) ......................................................................................................... 17

*Crowder v. Housing Authority of City of Atlanta,*
990 F.2d 586 (11th Cir. 1993) ......................................................................................... 23, 25

*Davison v. Randall,*
912 F.3d 666 (4th Cir. 2019) ............................................................................. 4, 7, 11, 13, 20

*Garnier v. Poway Unified School District,*
No.: 17-cv-2215-W (JLB), 2019 WL 4736208 (S.D. Cal. Sept. 26, 2019) .......... 5, 7, 13, 22, 25

*Knight First Amendment Inst. at Columbia Univ. v. Trump,*
302 F. Supp. 3d 541 (S.D.N.Y. 2018) ............................. 3, 4, 7, 9, 13, 14, 15, 16, 17, 19, 22, 24

*Knight First Amendment Inst. at Columbia Univ. v. Trump,*
928 F.3d 226 (2d Cir. 2019) ........................................................................ 4, 7, 9, 10, 12, 22, 24

*One Wisconsin Now v. Kremer,*
354 F. Supp. 3d 940 (W.D. Wis. 2019) ................................................... 5, 6, 7, 11, 12, 13, 23

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
460 U.S. 37 (1983) ..................................................................................................... 13, 14, 23

*Price v. City of New York,*
15 Civ. 5871 (KPF), 2018 WL 3117507 (S.D.N.Y. June 25, 2018) ............................ 10, 11, 20

*U.S. v. Cassidy,*
814 F. Supp. 2d 574 (D. M.D. 2011) ................................................................................. 20, 21

## INTRODUCTION

Defendant John Merrill's Renewed Motion for Summary Judgment is due to be denied.[1]  His "Renewed Motion For Summary Judgment and Memorandum of Law in Support Thereof" is nearly identical to his first Motion for Summary Judgment, which this Court denied as being unsupported by any factual record. Since that time, the Parties agreed to joint stipulations of fact which have been filed with this Court. (Doc. 34).  However, Merrill does not cite to any stipulated fact at any point in his Renewed Motion for Summary Judgment.

Merrill also fails to distinguish the numerous cases discussed in Plaintiffs' Motion for Summary Judgment which held that various public officials violated the First Amendment when they blocked individuals from their social media accounts.  Merrill also makes no attempt to convince this Court that those cases were wrongly decided.

The only effort Merrill makes to distinguish the present case from any of the cases cited in Plaintiffs' Motion for Summary Judgment is to contend that his decision to block the Plaintiffs from the @JohnHMerrill account was viewpoint neutral.  However, Merrill provides absolutely no evidence for this assertion, which is contrary to the very first stipulation in the Parties' filed stipulations:

---

[1] Plaintiffs note that Merrill did not file a response to Plaintiffs' Motion for Summary Judgment as permitted by the Court. *See* Order, Doc. 38. Consequently, with Plaintiffs' Response, briefing in this matter is complete.

"Defendant has agreed that he will not contest Plaintiffs' allegation that the Plaintiffs were blocked from the @JohnHMerrill Twitter account **because** the Plaintiffs posted tweets in which they engaged him concerning election law, criticized him or made comments with which Defendant disagrees." (Stip. ¶1) (emphasis added). Further, even if Merrill did not engage in viewpoint discrimination, he must still establish that his act of blocking the Plaintiffs was narrowly tailored to serve a significant government interest, which he has wholly failed to do.

Plaintiffs' Motion for Summary Judgment, which applies applicable case law to the Parties' stipulated facts, is due to be granted. Defendant's Renewed Motion for Summary Judgment, which fails to cite to **any** stipulated fact, asserts disputed facts which are not supported by **any** evidence, and which fails to distinguish applicable case law, is due to be denied.

## ARGUMENT

## I. MERRILL'S ARGUMENT THAT PLAINTIFFS HAVE NOT ESTABLISHED STATE ACTION IS CONTRARY TO APPLICABLE CASE LAW

Merrill argues that the Plaintiffs cannot establish a violation of the First Amendment because his "decision to block the Individual Plaintiffs from the @JohnHMerrill account was not state action." (Doc. 39, p. 5). Merrill argues,

> Here, the Defendant does not operate his personal Twitter account by virtue of state law, nor is his use of the @JohnHMerrill Twitter

account a right conferred by the Office of Secretary of State. Twitter
is a private platform, run by a private company, and it structures the
interactions of its users on its own terms. The Defendant established
the @JohnHMerrill account in 2009, and has used the account prior to
his 2010 to 2014 service as a former Republican member of the
Alabama House of Representatives, District 62; and continued to use
the account after his inauguration as Alabama's 53rd Secretary of
State; and, will be free to use it after he leaves office.

(Doc. 39, p. 6).

As Plaintiffs explained in their Motion for Summary Judgment, these
arguments have repeatedly been rejected by courts which have found that various
public officials acted in a governmental capacity, acted under color of law, or
engaged in state action in blocking users from their social media accounts.  In
*Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541,
564 (S.D.N.Y. 2018) ("*Knight I*"), aff'd, 928 F.3d 226 (2d Cir. 2019), the district
court addressed President Trump's argument that there was no "state action" by
initially pointing out, "[T]he requirement of state action in the forum context is not
usually analyzed separately … from the government control-or-ownership
requirement." *Knight*, 302 F. Supp. 3d at 568.  In finding that President Trump's
control over the account was governmental in nature, the court found that President
Trump's "reliance on the President's establishment of the account in 2009, Stip.
¶32—well before his election and inauguration as President—is unpersuasive."
*Knight*, 302 F. Supp. 3d at 569.  The court explained,

3

> Here, the President and Scavino's ***present use*** of the
> @realDonaldTrump account weighs far more heavily in the analysis
> than the origin of the account as the creation of private citizen Donald
> Trump. That latter fact cannot be given the dispositive weight that
> defendants would ascribe to it. Rather, because the President and
> Scavino ***use the*** @realDonaldTrump ***account for governmental
> functions***, the control they exercise over it is accordingly
> governmental in nature.

*Id*. (emphasis added).

On appeal, the Second Circuit agreed that the President acted in a

governmental capacity in operating his Twitter account and in blocking the

plaintiffs: "The government's contention that the President's use of the Account

during his presidency is private founders in the face of the uncontested evidence in

the record of substantial and pervasive government involvement with, and control

over, the Account." *Knight First Amendment Inst. at Columbia Univ. v. Trump*,

928 F.3d 226, 235 (2d Cir. 2019) (*Knight II*).

Similarly, in *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), the Fourth

Circuit Court of Appeals found that a county official acted under color of law in

blocking a constituent from her Facebook page where she "used the Chair's

Facebook Page 'as a tool of governance'" in that she used the page to post

"regarding a variety of trips and meetings she had taken in furtherance of Loudoun

County" as well as "to advise the public regarding official actions taken by the

Loudoun Board." *Davison*, 912 F.3d at 680 (quoting district court opinion,

*Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 713 (E.D. Va.

2017)).  This was true notwithstanding that she sometimes also used the page to post about personal matters "such as her affection for the German language or pride in becoming an organ donor." *Id.*

In *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940 (W.D. Wis. 2019), the court likewise found that members of the Wisconsin State Assembly acted under color of law when they blocked the plaintiff from their Twitter accounts. This holding was based on the court's findings that the Twitter accounts were "swathed in the trappings of their office" in identifying the registered users as members of the state legislature and were "intertwined with their public responsibilities" since the members "use their accounts to share information on legislative matters, policies, political appearances, and events." *One Wisconsin Now,* 354 F. Supp. 3d at 952.

In *Garnier v. Poway Unified School District*, No.: 17-cv-2215-W (JLB), 2019 WL 4736208 (S.D. Cal. Sept. 26, 2019), the court found that school board members acted under color of state law in administering their Twitter accounts and Facebook pages where the accounts "were used to inform the public about [defendants] official activities, as well as information related to PUSD (Poway Unified School District) and the Board." *Garnier*, 2019 WL 4736208 at *7.  The court explained, "Their ability to post about district events they attended and share Board information was due to their positions as public officials within PUSD." *Id.*

*See also Campbell v. Reisch*, No. 2:18-CV-4129-BCW, 2019 WL 3856591
(Aug. 16, 2019) (defendant controlled her Twitter account "in her capacity as a
state legislator" where the "government associations" connected with her posts
"overshadow[ed]" the account's personal posts), *appeal filed* (8th Cir. Sept. 16,
2019).

In the present case, John Merrill's use of his Twitter account cannot be
meaningfully distinguished from the way in which the public officials in the above
cited cases used their social media accounts.  In fact, the stipulations in the present
case mirror the stipulations the court in *Knight* cited as forming the basis for its
conclusion that President Trump acted in a governmental capacity in controlling
his Twitter account.  For instance, the joint stipulations in the present case provide
that Merrill "uses his Twitter account as a channel for communicating and
interacting with the public about the administration of the Alabama Office of the
Secretary of State" (Stip. ¶90), "uses @JohnHMerrill to announce, describe, and
defend his policies" (*Id*. ¶83), "uses @JohnHMerrill to announce official decisions
and government business" (*Id*. ¶84), "uses @JohnHMerrill to publicize visits to
constituents" (*Id*. ¶85), and "uses @JohnHMerrill to announce official Secretary of
State decisions and policies before those decisions and policies are announced
through other official channels." (*Id*. ¶88).  The @JohnHMerrill account is also
"swathed in the trappings of [Merrill's] office." *One Wisconsin Now*, 354 F. Supp.

3d at 952.  The account is presented as being registered to John Merrill, "Representing the People of Alabama as their 53rd Secretary of State." (Stip. ¶¶3, 81, 92), and the account's photo gallery is filled with photographs of Merrill meeting with other public officials, interacting with the public, and holding press conferences in his capacity as Secretary of State. (*Id*. ¶82).  The @JohnHMerrill account is recognized as the official account of Secretary of State John Merrill by the office's @alasecofstate account, "an undoubtedly official Twitter account run by the government" with the @alasecofstate account routinely tagging the @JohnHMerrill account each time it refers to "Secretary of State John Merrill" and "republish[ing] tweets from the [@JohnHMerrill] Account." *Knight II*, 928 F.3d at 235 (Stip. ¶¶98, 99, 100).

At no point in his Motion for Summary Judgment does Merrill attempt to distinguish the way he uses the @JohnHMerrill Twitter account from the way the public officials in *Knight*, *Davison*, *One Wisconsin Now*, *Garnier*, and *Campbell* used their social media accounts.  This failure to address the issues is true notwithstanding that these cases were all discussed in Plaintiffs' Motion for Summary Judgment which was filed with this Court on November 12, nearly a month prior to Merrill filing his Renewed Motion for Summary Judgment.[2]  The

---

[2] To be clear, the criticism here is not of the Attorney General's office, which has been put in the difficult position of having to defend an indefensible position because John Merrill has insisted

only reasonable inference is that Merrill ignored the findings in cases directly on point because those cases cannot be meaningfully distinguished under the stipulated facts of this case.

For all these reasons, John Merrill's argument that there is no "state action" in the present case is contrary to the weight of the authority on this issue and the stipulated facts.

## II. MERRILL'S ARGUMENT THAT THE PUBLIC FORUM DOCTRINE IS NOT IMPLICATED IS WITHOUT MERIT

Merrill next argues that a forum analysis is inapplicable because his use of the @JohnHMerrill account constitutes "government speech." (Doc. 39, p. 7).  He further argues that the @JohnHMerrill account is not "government property from which private individuals can speak." (Doc. 39, p. 11).  Neither argument has merit.

### A. MERRILL'S ARGUMENT THAT *HIS* USE OF TWITTER IS "GOVERNMENT SPEECH" MISSES THE POINT

Merrill argues that the forum analysis does not apply to the @JohnHMerrill account because his use of the account constitutes "government speech" to which the First Amendment does not apply.  Merrill argues, "Even if the Defendant's use of his private Twitter account was state action, the account is a tool for him to

---

on litigating this case in spite of all of the legal authority against him.  The criticism is of John Merrill, who has wasted the Attorney General's time and the taxpayers' money to litigate a defenseless case.

speak, not a forum for private speech." (Doc. 39, p. 8).  Merrill's argument misses

the point because he fails to understand both the existence and the significance of

the relevant "forum."  Plaintiffs do not seek access to John Merrill's Twitter

account nor do they seek to exercise any control over what he tweets or what

appears on his timeline.  Rather, they seek access to the interactive space for

replies, just as all non-blocked Twitter users enjoy.  Numerous courts have found

that this interactive space does not constitute government speech.  For instance, in

*Knight I*, the district court noted that while President Trump's original tweets, as

well as his timeline, constituted government speech which was "not susceptible to

forum analysis" "the same cannot be said … of the interactive space for replies and

retweets created by each tweet sent by the @realDonaldTrump account." *Knight,*

302 F. Supp. 3d at 572.  The court recognized that the replies are controlled by the

users who generate them and "remain the private speech of the replying user." *Id*.

The court held, "In sum, we conclude that the ***interactive space*** associated with

each of the President's tweets is ***not government speech*** and is properly analyzed

under the Supreme Court's forum precedents." *Id*. (emphasis added).

On appeal, the Second Circuit agreed.  The court noted, "Everyone concedes

that the President's initial tweets … are government speech. But this case does not

turn on the President's initial tweets; it turns on his supervision of the interactive

features of the Account." *Knight II*, 928 F.3d at 239.  The court explained,

9

> When a Twitter user posts a reply to one of the President's tweets, the message is identified as coming from that user, not from the President. There is no record evidence, and the government does not argue, that the President has attempted to exercise any control over the messages of others, except to the extent he has blocked some persons expressing viewpoints he finds distasteful. The contents of retweets, replies, likes, and mentions are controlled by the user who generates them and not by the President, except to the extent he attempts to do so by blocking.

*Id*.

The court concluded, "Accordingly, while the President's tweets can accurately be described as government speech, the retweets, replies, and likes of other users in response to his tweets are not government speech under any formulation." *Id*.

Similarly, the district court in *Price v. City of New York*, 15 Civ. 5871 (KPF), 2018 WL 3117507 (S.D.N.Y. June 25, 2018), rejected the City's argument that a forum analysis was inapplicable to its conduct in blocking the plaintiff from Twitter accounts maintained by city officials because the accounts constituted "government speech."  The district court reasoned,

> [R]easonable observers of the official Twitter accounts would understand that Plaintiff's reply tweets—those that sharply criticized the City's handling of domestic abuse victims and warning other victims of the possible consequences of relying on City agencies for assistance—were not the City's own speech, but were Plaintiff's alone. These messages emanated from Plaintiff's own Twitter account and clearly identified Plaintiff (or at least her Twitter account) as the speaker.

*Price*, 2018 WL 3117507 at *14 (footnotes added).

The court therefore concluded, "[T]he conduct of [the defendants] in blocking Plaintiff from the official Twitter accounts cannot be classified as government speech. It is instead governed by the Free Speech Clause of the First Amendment." *Id*.

Similarly, in *Davison*, the Fourth Circuit rejected the school board chair's argument that her Facebook page constituted government speech.  The court pointed out that the argument "fails to recognize the meaningful difference between Randall's posts to the Chair's Facebook Page and the public comments and posts she invited in the page's interactive space." *Davison*, 912 F.3d at 686. The court conceded, "To be sure, Randall's comments and curated references on the Chair's Facebook Page to other Pages, personal profiles, and websites amount to governmental speech." *Id*.  But the court concluded, "[T]he interactive component of the Chair's Facebook Page—the portion of the middle column in which the public can post comments, reply to posts, and 'like' comments and posts—is materially different." *Id*.  The court reasoned, "[C]omments and posts by users cannot be mistaken for Randall's own speech because they identify the posting or replying personal profile or Page, and thereby distinguish that user from Randall." *Id*.

The court in *One Wisconsin Now* similarly concluded, "[T]he court agrees with the district court in *Knight* and the Fourth Circuit in *Davison* finding that the

interactive portion is severable from the rest of the Twitter account and not subject to the government speech exception." *One Wisconsin Now*, 354 F. Supp. 3d at 955.

In the present case, John Merrill's own tweets are, without question, "governmental speech."  But the interactive space associated with those tweets, which is the access the Plaintiffs in this case seek, is most assuredly not government speech.  The Parties' stipulations of fact provide, "When a reply is posted to one of Defendant Merrill's tweets it is clear that the "message in the reply is coming from that individual user not from the Secretary of State" (Stip. ¶74), and "[t]he contents of retweets, replies, likes, and mentions are controlled by the user who generates them and not by the Secretary of State except to the extent he attempts to do so by blocking." (Id. at ¶75).  "Accordingly, while [Merrill's] tweets can accurately be described as government speech, the retweets, replies, and likes of other users in response to his tweets are not government speech under any formulation." *See Knight II*, 928 F.3d at 239.  For these reasons, the government speech exception is inapplicable.

## B. MERRILL'S ARGUMENT THAT THE PUBLIC FORUM DOCTRINE IS INAPPLICABLE BECAUSE THE ACCOUNT IS NOT "GOVERNMENT PROPERTY" IS NOT SUPPORTED BY ANY APPLICABLE CASES

Merrill next argues that a forum analysis is inapplicable because "Plaintiffs cannot establish that the Defendant's Twitter account is properly considered government property from which private individuals can speak," and because "the

12

Defendant has not taken steps to convert the @JohnHMerrill account into a forum for the speech of other Twitter users." (Doc. 39, p. 11).  These arguments are legally unsupportable.  These arguments, like Merrill's arguments discussed above, were presented, verbatim, to the district court and the Second Circuit Court of Appeals in *Knight I* and *Knight II*, and ***those arguments were rejected*** by both the trial and appellate courts.  In *Knight I*, the district court held, "We conclude that the interactive space of a tweet from the @realDonaldTrump account constitutes a designated public forum." *Knight*, 302 F. Supp. 3d at 575.  On appeal, the Second Circuit agreed,

> Opening an instrumentality of communication "for indiscriminate use by the general public" creates a public forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The Account was intentionally opened for public discussion when the President, upon assuming office, repeatedly used the Account as an official vehicle for governance and made its interactive features accessible to the public without limitation. ***We hold that this conduct created a public forum***.

*Knight II*, 928 F.3d at 237 (emphasis added).

See also *Campbell*, 2019 WL 3856591 at *7 ("[T]he interactive spaces of Defendant's tweets are properly considered a designated public forum"); *One Wisconsin Now*, 354 F. Supp. 3d at 955 ("[T]he interactive portions of the defendants' respective Twitter accounts constitute designated public forums"); *Davison*, 912 F.3d at 687 ("[T]he interactive component of the Chair's Facebook Page amounts to a public forum"); *Garnier*, 2019 WL 4736208 at *8 ("MOR and

Zane opened their pages 'for indiscriminate use by the general public,' and as a result created public forums").

Since taking office as Secretary of State, John Merrill has used the @JohnHMerrill Twitter account as an "official vehicle for governance and made its interactive features accessible to the public without limitation." *Knight I*, 928 F.3d at 237.  The Parties' Stipulations provide that Merrill has not set the account to the private Twitter setting or "protected" his tweets. (Stip. ¶¶69, 70).  Merrill has opened the interactive space on his Twitter account to the public at large and anyone who wants to follow the account can do so. (Stip. ¶¶68, 72).  Merrill has not issued any rule or statement purporting to limit (by form or subject matter) the speech of those who reply to his tweets. (*Id*. ¶71).  Rather, the interactive features of the [@JohnHMerrill] account are open "for indiscriminate use by the general public." *Perry, 460 U.S. at 47*.  The only users who cannot follow @JohnHMerrill are those whom Defendant Merrill has blocked. (Stip. ¶71).  Under these facts, "the interactive space of a tweet from the [@JohnHMerrill] account constitutes a designated public forum." *Knight*, 302 F. Supp. 3d at 575.

## III. MERRILL'S ARGUMENT THAT THE PLAINTIFFS HAVE NOT SHOWN A FIRST AMENDMENT VIOLATION IS WITHOUT MERIT

Merrill's next argument is that there has been no First Amendment violation because the First Amendment is not implicated, and because his blocking of the Plaintiffs was "viewpoint neutral."  Neither argument has merit.

## A. MERRILL'S ARGUMENT THAT THE FIRST AMENDMENT IS NOT IMPLICATED AGAIN MISUNDERSTANDS THE TWITTER FORUM

Merrill argues that the First Amendment "does not create an entitlement to use Twitter to communicate with the government" nor does it create an obligation on the part of any government official "to listen or respond to individuals' communications on public issues." (Doc. 39, p. 16). However, Merrill confuses an obligation on his part to listen to a Twitter user, which he rightly points out does not exist, with the First Amendment right of the Twitter user to participate in the interactive space associated with the tweets and replies. As noted by the district court in *Knight*,

> The audience for a reply extends more broadly than the sender of the tweet being replied to, and blocking restricts the ability of a blocked user to speak to that audience. While the right to speak and the right to be heard may be functionally identical if the speech is directed at only one listener, they are not when there is more than one.

*Knight*, 302 F. Supp. 3d at 577.

Neither Plaintiffs nor any Twitter user is trying to force Merrill, legally or otherwise, to listen to them or communicate with them or through them. As was pointed out in *Knight*, if Merrill does not want to read the replies of a Twitter user, he can "mute" that person rather than block them. (Stip. ¶¶47, 48). Muting would prevent Merrill from seeing the tweets of the person in question, but it would still enable the user to view and interact with Merrill's tweets.

15

> [M]uting allows a user to ignore an account with which the user does not wish to engage. The muted account may still attempt to engage with the muting account—it may still reply to tweets sent by the muting account, among other capabilities—but the muting account generally will not see these replies. Critically, however, the muted account may still reply directly to the muting account, even if that reply is ultimately ignored.

*Knight*, 302 F. Supp. 3d at 576.

Merrill next argues that "the First Amendment does not create a right to follow the @JohnHMerrill account as a means of accessing official information." (Doc. 39, p. 16). Merrill further argues,

> Even if such a right did exist, it would not be at issue here because the Individual Plaintiffs have the same ability to view tweets from the @JohnHMerrill account as the average member of the general public. All that is required to view the Defendant's tweets is to visit the @JohnHMerrill page via an internet browser that is not signed in to Twitter.

(*Id.*).

The district court in *Knight* rejected this identical argument:

> Thus, even though defendants are entirely correct in contending that the individual plaintiffs may continue to access the content of the President's tweets, Stip. ¶¶ 55–56, … the blocking of the individual plaintiffs has the discrete impact of ***preventing them from interacting*** directly with the President's tweets, Stip. ¶ 54, thereby restricting a real, albeit narrow, slice of speech. ***No more is needed to violate the Constitution***.

*Knight*, 302 F. Supp. 3d at 577 (emphasis added).

In the present case, whether or not the blocked users are still able to ***view*** Merrill's tweets in some manner, they are prevented from ***interacting*** directly with

those tweets in the same way as other Twitter users, and "[n]o more is needed to

violate the Constitution." *Id*. (Stip. ¶61).

### B. MERRILL'S ARGUMENT THAT HIS BLOCKING OF THE INDIVIDUAL PLAINTIFFS WAS VIEWPOINT NEUTRAL IS CONTRARY TO THE STIPULATED FACTS, IS UNSUPPORTED BY ANY EVIDENCE, AND MISINTERPRETS THE APPLICABLE LAW

Merrill next argues, "[T]he Defendant's actions in barring access of the

Individual Plaintiffs to his account was not the result of viewpoint-based exclusion

in violation of the free speech clause." (Doc. 39, p. 17).  In support of this

argument, Merrill relies on *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*.,

473 U.S. 788, 806 (1985), for the proposition, "'Control over access to a

***nonpublic forum*** can be based on subject matter and speaker identity so long as

the distinctions drawn are reasonable in light of the purpose served by the forum

and are viewpoint neutral." Merrill's MSJ, p. 17 (emphasis added).

The first problem with this argument is that we are not dealing with a "non-

public forum."  As noted above, the "interactive space of a tweet from the

[@JohnHMerrill] account constitutes a ***designated public forum***." *Knight*, 302 F.

Supp. 3d at 574-575 (emphasis added).

Second, even if the interactive space of the @JohnHMerrill Twitter account

were a "non-public forum," Merrill's argument that his blocking is viewpoint

neutral is contrary to the stipulated facts and the law.  Merrill argues, "The

blocking of the Plaintiffs, which resulted from their tweets - which the Defendant

17

deemed to be disruptive or personal attacks - were [*sic*] viewpoint-neutral, therefore permissible and withstand First Amendment scrutiny." (Doc. 39, p. 18). However, under the stipulation of facts agreed to by the Parties, the very first stipulation is "Defendant has agreed that he ***will not contest*** Plaintiffs' allegation that the Plaintiffs were ***blocked*** from the @JohnHMerrill Twitter account ***because*** the Plaintiffs posted tweets in which they engaged him concerning election law, criticized him or made comments with which Defendant disagrees." (Stip. ¶1) (emphasis added).

Furthermore, Merrill has offered absolutely no evidence in support of his contention that the "blocking of the Plaintiffs" "resulted from their tweets - which the Defendant deemed to be disruptive or personal attacks."  The Plaintiffs very much dispute Merrill's characterization of the Plaintiffs' tweets and Merrill's proffered reason for blocking the Plaintiffs.  Merrill copied and pasted this entire section of his motion from his first failed Motion for Summary Judgment which he filed on November 26, 2018. (Doc. 12, p. 18).  In denying that motion, this Court noted that the motion "was filed without any supporting evidentiary material and contains no citations." (Doc. 28, p. 2).  This Court continued,

> For example, defendant argues that "[t]he blocking of the Individual Plaintiffs, which resulted from their tweets – which the Defendant deemed to be disruptive or personal attacks – were viewpoint neutral[.]" (Doc. 12) at 18. Plaintiffs "disagree about the circumstances surrounding the blocking" and "strongly take issue with Merrill's assertion that they were being disruptive and making

personal attacks as Defendant's motion suggests." (Doc. 16) at 30. ***Yet Secretary Merrill has provided the court with no factual material supporting his position*** although the tweets at issue are presumably readily available.

(Doc. 28, p. 3)(emphasis added).

Merrill has ***still not*** provided this Court with any evidence in support of the above assertions.  The only factual record which is before this Court is the Parties' filed Stipulation, and Merrill cites ***nothing*** in the filed Stipulation which supports his claim that his blocking of the Plaintiffs was viewpoint neutral.  In fact, there is not one citation to the Parties' stipulated facts anyplace in Merrill's entire motion and memorandum of law.

Finally, the arguments in this section of Merrill's motion misinterpret the applicable law.  Blocking individuals who post comments with content which "annoy[s] the Defendant" or which he views as "personal attacks" is the very definition of content-based regulation of speech. (Doc. 39, p. 17-18).  As was discussed at length in the Plaintiffs' Motion for Summary Judgment, courts have routinely found that there is nothing viewpoint neutral in public officials blocking users from their social media accounts because the users post comments criticizing them:  "The blocking of the individual plaintiffs, which resulted from their 'tweets that criticized the President or his policies,' Stip. at 1, is not viewpoint-neutral…." *Knight*, 302 F. Supp. 3d at 575 n.22; "Randall's decision to ban Davison because of his allegation of governmental corruption constitutes black-letter viewpoint

discrimination." *Davison*, 912 F.3d at 675; "Defendant blocked Plaintiff based on his expressive activity in critique of Defendant.  Defendant's action in blocking Plaintiff is not content-neutral." *Campbell*, 2019 WL 3856591 at *8; "Very shortly after posting the critical tweets, [defendants] blocked Plaintiff from the official accounts. … [I]t appears that [defendants] expelled Plaintiff from the official Twitter accounts on the basis of her viewpoint." *Price,* 2018 WL 3117507 at *16.

Allowing public officials such as Merrill to block individuals from their public social media accounts if they post replies which the public officials find "annoying" or "harassing" would run afoul of the very liberties protected by the First Amendment.  In *U.S. v. Cassidy*, 814 F. Supp. 2d 574 (D. M.D. 2011), the court found that a statute which prohibited using an Internet blog to "harass" or "cause substantial emotional distress" to another person was an impermissible content-based restriction on protected speech.  The court noted,

> Indeed, the Supreme Court has consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern. This is because "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide 'adequate breathing space' to the freedoms protected by the First Amendment."

*Id.* at 582 (quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988), quoting in turn *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

The court reasoned, "Typically, a restriction is content-based if it regulates speech based on the effect that speech has on an audience." *Id.* at 584.  The court

concluded that the statute "amounts to a content-based restriction because it limits speech on the basis of whether that speech is emotionally distressing to [the targeted person]." *Id.* The court explained, "Twitter and Blogs are today's equivalent of a bulletin board that one is free to disregard, in contrast, for example, to e-mails or phone calls directed to a victim."[3] *Id.* at 585-586. In finding that the statute was not narrowly tailored to a compelling governmental interest, the court also found it important that the target of the internet attacks was "an easily identifiable public figure" and that many of the defendant's statements were related to that public figure's "beliefs and … qualifications as a leader." *Id.* at 586. The court concluded,

> Thus, this statute sweeps in the type of expression that the Supreme Court has consistently tried to protect. *See e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 271, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)(the fundamental importance of the free flow of ideas and opinions on matters of public concern is the core of the First Amendment Protections, even where ***speech includes "vehement caustic and sometimes unpleasantly sharp attacks***.").

*Id.* (emphasis added).

In the present case, Merrill has not suggested that any of the Plaintiffs have posted speech which would constitute "obscenity, defamation, fraud, incitement,

---

[3] As noted above, Merrill can "mute" particular users on Twitter if he does not want to read their posts, and this would not interfere with the user's ability to participate in the interactive space associated with Merrill's tweets. (Stip. ¶¶47, 48).

and speech integral to criminal conduct." *Knight*, 302 F. Supp. 3d at 565.[4]  Rather,

Merrill simply did not like or agree with the content of the Plaintiffs' tweets.

Therefore, his argument that his blocking of the Plaintiffs was viewpoint neutral,

which is directly contradicted by the Parties' stipulation of facts, is unsupported by

any evidence, and which misunderstands the applicable law, is without merit.

## III. MERRILL'S ATTEMPT TO DISTINGUSH *KNIGHT* AND *GARNIER* IS UNPERSUASIVE

Merrill's last argument is, "Even if Defendant Merrill's Twitter account is a

designated public forum … blocking these plaintiffs represents reasonable time,

place and manner regulations." (Doc. 39, p. 19).  Merrill argues that this creates "a

distinction in the facts of this case" from *Knight* or *Garnier*. (Id.).  Merrill then

asserts, without citing to ***anything*** in the factual record before this Court,

> Here, the Plaintiffs were blocked because they posted comments
> which were argumentative and not intended to advance the discourse
> but merely to antagonize, annoy and harass. Further, these comments
> and posts prevented Defendant Merrill from accomplishing his
> business – informing the public of his activities, interests and
> accomplishments.

(Doc. 39, p. 19-20).

---

[4] There has also been no allegation that the Plaintiffs' tweets violated the terms and conditions
imposed by Twitter, which would have disabled their accounts if they had.

Merrill concludes, "The Plaintiffs have failed to establish by the stipulated facts of this case that their tweets were indeed blocked based on viewpoint discrimination but rather were blocked as they disrupted Defendant Merrill's social media page." (Doc. 39, p. 20).

First, the Plaintiffs do not have the burden of establishing viewpoint discrimination.  The Plaintiffs need only show that they were excluded from a designated public forum.  The burden then shifts to Merrill to establish that his decision to block the Plaintiffs was "content-neutral" and was "narrowly tailored to serve a significant government interest." *Crowder v. Housing Authority of City of Atlanta*, 990 F.2d 586, 590 (11th Cir. 1993) (quoting *Perry*, 460 U.S. at 45–46); "[T]he *defendants* bear the burden to come forward with a compelling state interest for blocking plaintiff … and that they have wholly failed to do." *One Wisconsin Now*, 354 F. Supp. 3d at 956 (emphasis in original).

Second, "the stipulated facts of this case" most certainly **do** establish that the Plaintiffs "were indeed blocked based on viewpoint discrimination."  As noted above, ***the Parties in the present case have stipulated*** that "Defendant has agreed that he ***will not contest*** Plaintiffs' allegation that the Plaintiffs were ***blocked*** from the @JohnHMerrill Twitter account ***because*** the Plaintiffs posted tweets in which they engaged him concerning election law, criticized him or made comments with which Defendant disagrees." (Stip. ¶1)(emphasis added).  This language is nearly

23

identical to the parties' stipulation in *Knight* that provided, "Defendants have agreed that they will not contest Plaintiffs' allegation that the Individual Plaintiffs were blocked from the President's Twitter account because the Individual Plaintiffs posted tweets that criticized the President or his policies."[5]  Based on that stipulation, the Second Circuit Court of Appeals noted, "The President concedes that he blocked the Individual Plaintiffs because they posted tweets that criticized him or his policies." *Knight II*, 928 F.3d at 234.  For this reason, the Second Circuit never considered it necessary to address whether the President engaged in viewpoint discrimination.  The court only addressed President Trump's arguments that his Twitter account was his private account controlled in his private capacity, or that it was government speech and, therefore, the First Amendment was inapplicable – arguments which the court rejected.

Under stipulation ¶1, viewpoint discrimination by Merrill has been established as uncontested.  This Court, like the court in *Knight*, need only address Merrill's argument that such viewpoint discrimination is permissible because the First Amendment does not apply to the @JohnHMerrill Twitter account.

Furthermore, even if there was no viewpoint discrimination, Merrill must still show that his act of blocking the Plaintiffs was "narrowly tailored to serve a

---

[5] https://knightcolumbia.org/documents/4f28c8c211/2017.09.25_ECF-28-1_Stipulation.pdf

significant government interest." *Crowder*, 990 F.2d at 590.  Merrill simply asserts, without evidence or explanation, that the Plaintiffs' "comments and posts prevented Defendant Merrill from accomplishing his business – informing the public of his activities, interests and accomplishments." (Doc. 39, p. 19-20).  How have the Plaintiffs, by posting comments in the interactive space which is specifically provided for replies by the general public, "prevented Defendant Merrill from accomplishing his business?"  Merrill does not say.  This falls far short of what is necessary for Merrill's conduct to survive strict scrutiny even if he could show that there was no viewpoint discrimination – something that is directly in contravention of stipulation ¶1.

For these reasons, Merrill's attempt to distinguish this case from *Knight* and *Garnier* is unpersuasive.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully ask that this Honorable Court deny Merrill's Renewed Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Done, on this the 18th day of December, 2019.


/s/ Brock Boone
Brock Boone

25

Brock Boone
Randall C. Marshall
ACLU of Alabama
P.O. Box 6179
Montgomery, AL 36106
bboone@aclualabama.org
rmarshall@aclualabama.org

Steven P. Gregory
Gregory Law Firm, P.C.
2700 Corporate Drive
Suite 200
Birmingham, AL 35242
steve@gregorylawfirm.us

M. Virginia Buck
Attorney at Law
13112 Martin Road Spur
Northport, AL 35473
bucklaw@charter.net

## **CERTIFICATE OF SERVICE**

I certify that I have on December 18, 2019, electronically filed the foregoing pleading with the Clerk of the Court, using the CM/ECF filing system which will send notification of the same to the following:

Benjamin H. Albritton
Office of the Attorney General
General Civil Litigation and
Administrative Law Division
501 Washington Avenue
Montgomery, AL 36104
Office: (334) 353-4840
Fax: (334) 242-2433
balbritton@ago.state.al.us

Madeline H. Lewis
Office of the Attorney General
General Civil Litigation and
Administrative Law Division
501 Washington Avenue
Montgomery, AL 36104
Office: (334) 353-4840
Fax: (334) 242-2433
mlewis@ago.state.al.us

/s/ Brock Boone
Brock Boone