IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLY FASKING, HERBERT HICKS, and HEATHER LYNN BOOTH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CASE NO. 2:18-cv-809-JTA |
| v. | ) ) | (WO) |
| WES ALLEN, Alabama Secretary of State, in his official capacity, | ) ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On September 19, 2018, Plaintiffs Kimberly Fasking, Herbert Hicks, and Heather Lynn Booth filed a Complaint against Alabama Secretary of State John Merrill in his official capacity[1] seeking declaratory and injunctive relief under 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiffs allege that Merrill violated their First Amendment rights under the United States Constitution by blocking them on his @JohnHMerrill Twitter account. They seek injunctive and declaratory relief. For the reasons stated below, the Court concludes that this action is due to be dismissed as moot.

---

[1] As of January 16, 2023, John H. Merrill is no longer Alabama's Secretary of State. By operation of Rule 25(d) of the Federal Rules of Civil Procedure, Wes Allen, who was sworn in as Alabama Secretary of State on January 16, 2023, was automatically substituted as Defendant in place of John H. Merrill.

## I.    JURISDICTION

This Court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 14, 15.) This Memorandum Opinion and Order addresses whether the case continues to present a case or controversy sufficient to satisfy the "case or controversy" jurisdictional requirements of Article III of the United States Constitution.

## II.    FACTS[2]

In 2009, before becoming Alabama Secretary of State, John Merrill established a Twitter account with the handle @JohnHMerrill. Merrill operates and/or oversees the operation of the @JohnHMerrill Twitter account, which has over 7,500 followers, and through which he has tweeted over 17,000 times. (*Id.* at ¶¶ 31, 76, 78.) Merrill uses his own personal electronic devices to manage the account. (Doc. No. 23-1.) While he was Secretary of State, Merrill used the @JohnHMerrill Twitter account as a way of communicating with the public about "the administration of the Alabama Office of the

---

[2] These facts are presented as stipulated to by the parties (Doc. No. 34) or as represented in uncontradicted exhibits and affidavits submitted by the parties. For a much more detailed discussion of how Twitter, tweets, and Twitter accounts generally worked at the time of the acts and omissions that form the basis of the Complaint, how Merrill used the @JohnHMerrill Twitter account, and of the facts relating to Merrill's blocking of Plaintiffs from that account, see the January 10, 2023 Memorandum Opinion and Order entered in this case. (Doc. No. 60 at 2-14).

Secretary of State[,] among other issues of interest to him or his followers." (*Id.* at ¶¶ 4, 5, 90; Doc. No. 23-1.) While Merrill was secretary of state, the @JohnHMerrill Twitter account's tagline read "Representing the People of Alabama as their 53rd Secretary of State." (*Id.* at ¶¶ 3, 31.)

In November, 2017, Merrill blocked all three Plaintiffs from the @JohnHMerrill account. (*Id.* at ¶¶ 10-17.) Merrill blocked Plaintiff Kimberly Fasking after she questioned him, via tweet, about crossover voting. (*Id.* at ¶¶ 10-12.) Merrill blocked Plaintiff Herbert Hicks after Hicks asked Merrill, via tweet, who had extended Merrill an invitation to speak at a ceremony commemorating the 51st Anniversary of Bloody Sunday[3] in Selma, Alabama. (*Id.* at ¶¶ 13-15.) Merrill blocked Plaintiff Lynn Booth after she tweeted about a typographical error on an Alabama election ballot. (*Id.* at ¶¶ 16-17.) The parties stipulate that Merrill blocked Plaintiffs from the @JohnJMerrill Twitter account because they posted

---

[3] The Court takes judicial notice that "Bloody Sunday" refers to the brutal March 7, 1965 attack in Selma, Alabama, by Alabama state troopers and a mounted sheriff's posse on people who intended to march to Montgomery to advocate for voting rights. John Lewis, *Reflections on Judge Frank M. Johnson, Jr.*, 109 YALE L.J. 1253, 1255-56 (2000). The purpose of the voting rights advocates' march from Selma to Montgomery was "to dramatize to the nation and to the world that people of color wanted to register to vote." John Robert Lewis, *The King Legacy*, 30 VT. L. REV. 349, 355 (2006); *see Williams v. Wallace*, 240 F. Supp. 100 (M.D. Ala. 1965) (Johnson, J.) (describing the attack on the marchers, discussing the march and its purpose to petition the government for voting rights, and ordering Alabama state officials to provide police protection to the marchers); *see also United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records."); Jack Bass, *The Selma March and the Judge Who Made It Happen*, 67 ALA. L.REV. 537, 537 (2015) (discussing *Williams v. Wallace*, Case No. 2:65-cv-2181-N, in which the Selma marchers sought injunctive relief to enable them to march without interference, and further discussing how Judge Richard Rives, Judge Frank M. Johnson, and Judge Johnson's law clerk, Walter Turner, watched from Judge Rives's fourth-floor chambers as the voting rights advocates passed by the federal courthouse on their march to the Alabama State Capitol after the court entered an injunction protecting the march). The Selma to Montgomery March ultimately catalyzed support for passage of the Voting Rights Act of 1965, 52 U.S.C. § 10301, *et seq*.

tweets that were directed at him and concerned election law, criticized him, or included comments with which he disagreed. (*Id.* at ¶ 1.)

Because they are blocked, Plaintiffs are unable to view tweets from the @JohnHMerrill account while they are logged in to their own Twitter accounts. (*Id.* at ¶¶ 18, 79.) Because they are blocked, Plaintiffs are also unable to directly reply to Merrill's tweets from the @JohnHMerrill account or participate in the comment threads associated with the @JohnHMerrill Twitter account. (*Id.* at ¶¶ 18, 79.) They cannot access the @JohnHMerrill page to view the comment threads associated with the @JohnHMerrill tweets while logged in to their accounts. (*Id.* at ¶ 79.)

At a hearing held February 15, 2023, it was undisputed that, when John Merrill left his position as Secretary of State on January 16, 2023, he remained the sole administrator of the @JohnHMerrill Twitter account, just as he had been before he became Secretary of State and while he served in that position. It is further undisputed that no one else at the Alabama State Department, including Defendant Allen, has or will ever have access to the account administrator tools for the @JohnHMerrill Twitter account, including the ability to block users from the account.

On February 22, 2023, Defendant Wes Allen submitted an affidavit stating the following:

> 1. My name is Wes Allen. I am the Secretary of State for the State of Alabama. I have held this position since January 16, 2023. I am over the age of 19, I am qualified to give this declaration, and I have personal knowledge of the matters set forth herein.
>
> 2. The Alabama Secretary of State's Office manages an official Twitter account under the handle @alasecofstate. I do not personally operate that

account. As a matter of practice, the Office does not block people for viewpoint-based reasons. I intend for that practice to remain in effect for the duration of my time as Secretary of State.

3. I previously operated a personal Twitter account under the handle @WesAllenAlabama. I recently deleted that account, and I have no plans at this time to reopen it. If I were to use a personal Twitter account in the future to discuss my official functions, I—for so long as I am Secretary of State— do not intend to block people for viewpoint-based reasons.

(Doc. No. 80-1.)

## III.   PROCEDURAL HISTORY

On September 19, 2018, Plaintiffs filed a Complaint against then-Defendant John H. Merrill in his official capacity pursuant to 42 U.S.C. § 1983. Plaintiffs alleged that, Merrill's "blocking of the … Plaintiffs from the @JohnHMerrill Twitter account,"[4] violated their First Amendment rights by imposing a viewpoint-based restriction on their participation in a public forum, imposing a viewpoint-based restriction on their ability to access official statements of the Secretary of State, and imposing a viewpoint-based restriction on their ability to petition the government for a redress of grievances. (Doc. No. 1 at ¶¶ 49-52.) Plaintiffs sought the following relief:

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Declare Defendant's viewpoint-based blocking of the Individual Plaintiffs from **the @JohnHMerrill account** to be unconstitutional;

2. Enter an injunction requiring Defendant to unblock Individual Plaintiffs from **the @JohnHMerrill account**, and prohibiting Defendant from blocking the Individual Plaintiffs or others from **the account** on the basis of viewpoint discrimination;

---

[4] It is undisputed that the @JohnHMerrill Twitter account was a Twitter account created by Merrill before he took office and that he was the account's sole account administrator.

3. Award Plaintiffs their costs and expenses, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. Grant any additional relief as may be just and proper.[5]

(*Id.* at 28 (emphasis added).)

On November 12, 2018, before filing an answer, Defendant filed a motion for summary judgment, arguing that his Twitter account is a personal account that is not owned or controlled by the government. (Doc. No. 12.) On August 28, 2019, the Court denied Defendant's motion on grounds that "the sparse summary-judgment record submitted by [Defendant] is insufficient to support his motion." (Doc. No. 28 at 1.) The Court stated that Defendant would be permitted to renew his motion when the record was more fully developed. (*Id.*)

On September 13, 2019, upon the agreement of the parties, the Court entered a scheduling order setting forth deadlines for the parties to submit an agreed stipulation of facts and for the filing of summary judgment motions. (Doc. No. 38.)

On September 24, 2019, Defendant filed an Answer to the Complaint. (Doc. No. 33.) On November 5, 2019, the parties filed their agreed stipulation of facts. (Doc. No. 34.) The stipulation of facts focused on Merrill's use of the @JohnHMerrill Twitter account and his blocking of Plaintiffs from that particular account. On November 12, 2019,

---

[5] Plaintiffs do not argue that this request for "any additional relief as may be just and proper," justifies retroactively amending their complaint to challenge the Secretary of State's potential policy of viewpoint-blocking of Twitter users from other personal accounts that have been converted into a tool of governance. Moreover, at this stage of the litigation, amendments to a complaint may be made "only with the opposing party's written consent or the court's leave," if "justice so required." Fed. R. Civ. P. 15(a)(2). Plaintiffs have not cited authority that a request for "other and different relief" can be used to provide relief for claims that were not asserted in the Complaint.

Plaintiffs filed a motion for summary judgment. (Doc. No. 37.) On December 29, 2019, Defendant filed a renewed motion for summary judgment. (Doc. No. 39.)

On May 20, 2020, Plaintiffs filed a motion to submit the case on the pleadings, requesting that the Court decide the case based on the parties' stipulation of facts and the summary judgment briefing. (Doc. No. 51.) On September 9, 2022, Defendant notified the Court in writing that he did not oppose the motion to submit the case on the pleadings. (Doc. No. 53.) On September 10, 2020, the Court entered an order granting the motion to submit the case on the pleadings and stating that "[t]his case is under submission on the pleadings." (Doc. No. 54.)

On January 10, 2023, the Court entered a Memorandum Opinion and Order that determined, as a matter of law applied to the undisputed facts concerning Plaintiffs' interactions with the @JohnHMerrill account and Merrill's use and supervision of the @JohnHMerrill account, that (1) "the government speech doctrine does not shield Defendant's conduct from the requirements of the Free Speech clause" (Doc. No. 60 at 24); (2) "[t]he speech in which Plaintiffs engage (and seek to engage) falls squarely within the realm of [protected] political speech" (*id*. at 25); (3) "the only reasonable inference that can be drawn from the undisputed facts is that [Merrill] blocked (and continues to block) Plaintiffs from the interactive space associated with the @JohnHMerrill account because of the viewpoints and content expressed in Plaintiffs' tweets" (*id*. at 30); (4) "[a]s a matter of law, [Merrill's] decision to block Plaintiffs cannot be constitutionally justified if that decision is attributable to the state" (*id*.); (5) "the interactive 'space' associated with the @JohnHMerrill account is the purported forum at issue in this case" (*id*. at 33-34); (6)

"treating the interactive space associated with the @JohnHMerrill account as a designated public forum is compatible with a central purpose and function of that space: allowing the public to expressively interact with the @JohnHMerrill account" (*id.* at 37); (7) "by maintaining the [@JohnHMerrill] account as a public account, [Merrill] did purposefully open that interactive space to the Twitter-using public for the purpose of expressive interaction with the account" (*id.*); and (8) that, on the record of undisputed facts, "at this time, neither party is entitled to judgment as a matter of law with respect to whether Defendant operated the @JohnHMerrill account under color of state law" (*id.* at 54).

Accordingly, in the January 10, 2023, Memorandum Opinion and Order, the Court ordered as follows regarding the parties' cross-motions for summary:

1.  Plaintiffs' motion for summary judgment (Doc. No. 37) is GRANTED in part and DENIED in part in that the Court concludes and DECLARES as follows:

    (a)     Expression by Plaintiffs and other members of the public **in the interactive space associated with Defendant's @JohnHMerrill** account is not government speech;

    (b)     If Defendant acted under color of state law **in blocking Plaintiffs from the @JohnHMerrill accoun**t, his blocking of Plaintiffs violated the Free Speech Clause; and

    (c)     In all other respects, Plaintiffs' motion for summary judgment is DENIED without prejudice to file a new motion for summary judgment at the close of discovery on the sole remaining issue in this case.

2.  Defendant's renewed motion for summary judgment (Doc. No. 39) is GRANTED in part as to Plaintiffs' claims for unconstitutional restriction on their right to access the @JohnHMerrill tweets and for unconstitutional restriction on their right to petition the government. In all other respects, Defendant's renewed motion for summary

judgment (Doc. No. 39) is DENIED without prejudice to file a new motion for summary judgment at the close of discovery on the sole remaining issue in this case.

3.   Plaintiffs' claim against Defendant for unconstitutional restriction on their right to access the @JohnHMerrill tweets is DISMISSED with prejudice;

4.   Plaintiffs' claim against Defendant for unconstitutional restriction on their right to petition the Government by interacting with the @JohnHMerrill account is DISMISSED with prejudice;

5.   **The sole remaining issue in this case is whether, in blocking Plaintiffs from accessing the interactive space associated with the @JohnHMerrill account, Defendant engaged in government action, acted under color of state law, and engaged in conduct that is fairly attributable to the state.**

6.   This case is SET for a scheduling conference at 9:00 a.m. on February 15, 2023 in Courtroom 4B, Frank M. Johnson, Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama.

(Doc. No. 60 at 58-59 (emphasis added).)

On January 16, 2023, Merrill ceased to be Alabama's Secretary of State. Because it was undisputed that he created the @JohnHMerrill account in 2009, many years prior to becoming Secretary of State, because it is undisputed that he was the sole administrator of the account, and because Merrill's counsel represented in a summary judgment brief that Merrill "will be free to use [the @JohnHMerrill account after he leaves office" (Doc. No. 12 at 6-7), the Court suspected that Wes Allen, the incoming Secretary of State who was sworn in on January 16, 2023, had no control of the @JohnHMerrill Twitter account. Therefore, on January 17, 2023, the Court "[ordered] that, on or before February 1, 2023, the parties shall each file a brief explaining their position as to whether this action is now

moot." (Doc. No. 62 at 1.) The parties have now addressed the issue of mootness through extensive briefing and at oral argument held on February 15, 2023.

The issue of mootness is now ripe for disposition.

## IV.   STANDARD OF REVIEW

"A moot case is nonjusticiable and Article III courts lack jurisdiction to entertain it." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004). This is because "[t]he doctrine of mootness derives directly from the case-or-controversy limitation" of Article III, as "an action that is moot cannot be characterized as an active case or controversy." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). Thus, "the 'case or controversy' requirement of Article III unambiguously *forbids*" courts from considering cases "in the absence of a live dispute. Any opinion on the matter would be purely advisory." *Al Najjar*, 273 F.3d at 1339 (emphasis in original). "If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion," which is impermissible. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005).

A case is moot "'when it no longer presents a live controversy with respect to which the court can give meaningful relief,'" the case is no longer "live," or "the parties lack a legally cognizable interest in the outcome." *Al Najjar*, 273 F.3d at 1335–36 (quoting *Florida Ass'n of Rehab. Facilities, Inc. v. Florida Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000)). "Mootness can occur due to a change in circumstances[] or . . . a change in the law." *Seay Outdoor Advert., Inc. v. City of Mary*

*Esther, Fla*., 397 F.3d 943, 946 (11th Cir. 2005). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar*, 273 F.3d at 1336.

" '[B]ecause the question of mootness is jurisdictional in nature, it may be raised by the court *sua sponte*, regardless of whether . . . the parties briefed the issue.' " *United States v. Hilario-Cana*, 779 F. App'x 700 (11th Cir. 2019) (quoting *Nat'l Advert.*, 402 F.3d at 1331–32); *see also Thompson v. Alabama,* 293 F. Supp. 3d 1313, 1328 (M.D. Ala. 2017) (quoting *Arbaugh* v. Y & H Corp., 546 U.S. 500, 514 (2006)) ("[A] federal court 'ha[s] an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'"). Thus, except in certain circumstances where a party alleges that its cessation of challenged conduct has mooted the claims against it,[6] when a substantial question of mootness arises, the allocation of the burden of proof is not determinative; rather, the Court "must consider the facts on the record and assess whether jurisdiction lies with th[e] court, regardless of who bears the burden of proof." *Chestnut v. Merrill*, 446 F. Supp. 3d 908, 916 (N.D. Ala. 2020); *see also Nat'l Advert.*, 402 F.3d at 1332 ("[W]e strictly observe the cases or controversies limitation."). *Cf. Murphy v. Sec'y, U.S. Dep't of Army*, 769 F. App'x 779, 782 (11th Cir. 2019) (holding that "[t]here is a presumption that every federal court is without jurisdiction unless the contrary

---

[6] *See Doe v. Wooten*, 747 F.3d 1317, 1322-23 (11th Cir. 2004) (detailing the factors and burden-shifting applicable where a government official's cessation of conduct is offered as a basis for a finding of mootness).

affirmatively appears from the record" and, thus, "[t]he burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction" (citations omitted)).

## V.      ANALYSIS

A. Plaintiff's Claims for Injunctive and Declaratory Relief are Moot

The First Amendment's Free Speech Clause "constrains governmental actors and protects private actors*." Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019). As the Court previously noted, "[i]f Defendant [Merrill] controls the @JohnHMerrill account solely as a means for his own expressive activities as a private citizen, it is not a public forum, and he is protected from government interference in how he chooses to administer that account." (Doc. No. 60 at 38-39). Plaintiffs concede that their "request for injunctive relief directing John Merrill to unblock Plaintiffs from the @JohnHMerrill Twitter account is moot because that Twitter account is no longer used as a tool of governance since Merrill's term as Secretary of State has ended." (Doc. No. 68 at 1.) The Court agrees that the request for injunctive relief is moot, not solely because the Secretary of State cannot possibly use the @JohnHMerrill as a tool of governance in the future, but also for the separate reason that Merrill alone controls who is and is not blocked from the @JohnHMerrill Twitter account; since he is no longer Secretary of State, he now exercises sole control over the @JohnHMerrill account as a private citizen unconstrained and protected by the First Amendment.

Plaintiffs contend, however, that their "request for declaratory judgment is not mooted simply because Merrill left office before this Court could reach a final disposition

in the case." (Doc. No. 68 at 2.) The Court agrees that is not the precise reason why the request for declaratory judgment is moot. Plaintiffs' request for the Court to enter a judgment "declar[ing] Defendant's viewpoint-based blocking of the Individual Plaintiffs from the @JohnHMerrill account [is] unconstitutional" is moot because, in leaving office, Merrill became a private citizen while retaining sole control over the @JohnHMerrill account. Thus, when he left office, he took with him the @JohnHMerrill account, and along with it, all power to make policies regarding the blocking of Twitter users from it. Any remaining declaratory relief regarding the constitutionality of viewpoint-based blocking from the @JohnHMerrill account would have no effect on the current Secretary of State's policies and, therefore, "lacks sufficient practical effect to avoid mootness." *Chestnut*, 446 F. Supp. 3d at 916. Also, as Plaintiffs have conceded with respect to the claim for injunctive relief, as a private citizen, neither Merrill nor the Secretary of State is any longer capable of using the @JohnHMerrill account as a tool of governance.[7]

Accordingly, issuing a declaration as to the constitutionality of Merrill's blocking of individuals from the @JohnHMerrill account would be an impermissible declaration on principle alone, without any accompanying live, actual case or controversy. Further, as the constitutionality of the Secretary of State's policy of blocking individuals from the @JohnHMerrill account on the basis of viewpoint is the only declaratory judgment claim asserted in this case, there are no remaining declaratory judgment claims that present a live case or controversy. *Cf. Saladin v. City of Milledgeville*, 812 F.2d 687, 693 (1987) (holding

---

[7] Whether Merrill ever used the @JohnHMerrill account as a tool of governance has not been and will not be decided by this Court.

that, where a city had removed a religious reference from the city's water towers, vehicles, and uniforms, the plaintiffs' Establishment Clause claims were moot as to the constitutionality of displaying the religious reference on those items because "[t]here [was] nothing left for the court to do on those claims except declare that the practices [were] unconstitutional for the principle of the matter," and because "[p]rinciple alone unaccompanied by a live case or controversy does not present a justiciable claim").

Nevertheless, Plaintiffs contend that a declaratory judgment regarding the blocking of individuals from the @JohnHMerrill account would have the practical effect of precluding the possibility that Defendant Allen might at one day reactivate *his own* private Twitter account, decide to convert that account into a tool of governance, and at some point block someone, possibly even one of the Plaintiffs, from that account on the basis of content or viewpoint. (*See* Doc. No. 81 at 15.) The first problem with Plaintiffs' argument is that its utter dependence on an attenuated chain of theoretically possible events places the argument in the realm of the hypothetical and, therefore, makes it an inappropriate justification for declaratory judgment. *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) ("For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) ("[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (citations and internal quotation marks omitted)).

The second but equally fatal problem with Plaintiffs' argument is that they did not frame their Complaint as challenging a Secretary of State policy of converting personal Twitter accounts (other than the @JohnHMerrill account) into tools of official administration without the necessary First Amendment protections, thus sneaking an end-run around the strictures of the constitution. That is not the case they brought to this Court, it is not the case that the parties have litigated for four years, and it is incongruent to the sole remaining issue in the case.[8] *Cf. Adler*, 112 F.3d at 1478 (limiting the mootness inquiry to relief applicable to the parties, theories, and claims asserted in in the complaint); *cf. also Etheredge v. Hall*, 996 F.2d 1173, 1176 (11th Cir. 1993) (in an appeal from denial of a motion for preliminary injunction, declining the plaintiff's invitation to recast the specific relief requested in the preliminary injunction motion, which was moot, as seeking broader relief on a different but related theory that was not moot, even though the complaint itself arguably sought such broader, potentially viable relief in a request for permanent declaratory and injunctive relief).

From the beginning, this case is and always has been about the Secretary of State's use of the @JohnHMerrill account (allegedly as a tool of office), about the Secretary of State blocking Plaintiffs from the @JohnHMerrill account, and about the constitutionality of the Secretary of State blocking Plaintiffs from the @JohnHMerrill account based on

---

[8] "The sole remaining issue in this case is whether, **in blocking Plaintiffs from accessing the interactive space associated with the @JohnHMerrill account**, Defendant engaged in government action, acted under color of state law, and engaged in conduct that is fairly attributable to the state." (Doc. No. 61 at 59 (emphasis added).)

content and viewpoint. The relief Plaintiffs request in their Complaint is (1) a declaration that "Defendant's viewpoint-based blocking of the Individual Plaintiffs from the @JohnHMerrill account [is] unconstitutional" and (2) "an injunction requiring Defendant to unblock Individual Plaintiffs from the @JohnHMerrill account, and prohibiting Defendant from blocking the Individual Plaintiffs or others from the account on the basis of viewpoint discrimination." (Doc. No. 1 at 28.) While the Complaint contains a passing reference to Merrill's alleged policy of prohibiting others from utilizing Merrill's personal "social media forums," plural, as a vehicle to "express their views or promote their agendas," read in context, that one reference cannot reasonably be interpreted to convert the Complaint into one challenging the use of viewpoint-based blocking from the Secretary of State's private social media accounts more generally. The Complaint contains no specific factual allegations whatsoever of other personal accounts being used as tools of governance and no specific allegations regarding viewpoint-based blocking from other personal accounts. The Complaint focuses exclusively on, premises its causes of action upon, and seeks relief from Merrill's alleged viewpoint-based blocking of Plaintiffs from the @JohnHMerrill account specifically.

The parties' joint stipulation of fact also pertains specifically to how Merrill used his @JohnHMerrill account and why he blocked Plaintiffs from that account. (Doc. No. 34.) While the stipulation does mention the existence of another Twitter account – the @alasecofstate account – that was operated by the Secretary of State's office, there are no allegations that Merrill or anyone at the Secretary of State's office blocked Plaintiffs or anyone else from the @alasecofstate account on the basis of content or viewpoint.

The January 10, 2023 Memorandum Opinion and Order (Doc. No. 15) considered in detail the law and the facts pertaining to Merrill blocking Plaintiffs from the @JohnHMerrill account. The Court entered partial summary judgment for Plaintiffs by declaring as follows: "Expression by Plaintiffs and other members of the public **in the interactive space associated with Defendant's @JohnHMerrill** account is not government speech;" and "If Defendant acted under color of state law **in blocking Plaintiffs from the @JohnHMerrill accoun**t, his blocking of Plaintiffs violated the Free Speech Clause." (*Id.* at 58 (emphasis added).) Finally, in the January 10, 2023 Memorandum Opinion and Order, the Court specifically stated that "**[t]he sole remaining issue in this case is whether, in blocking Plaintiffs from accessing the interactive space associated with the @JohnHMerrill account, Defendant engaged in government action, acted under color of state law, and engaged in conduct that is fairly attributable to the state.** (*Id.* at 59 (emphasis added).)

Thus, the factual allegations in the Complaint pertain to the Secretary of State's use of the @JohnHMerrill account, his alleged policy toward blocking users from the @JohnHMerrill account, and his decision to block Plaintiffs from that account. (*See, e.g.*, *id.* @ ¶¶ 4-5, 17-19, 32-45, 50-53.) The parties' summary judgment motions and the January 10, 2023, Memorandum Opinion and Order were likewise limited to consideration of whether the interactive space associated with the @JohnHMerrill account is a public forum from which Plaintiffs were unconstitutionally excluded. The sole remaining issue is the capacity in which Merrill operated the @JohnHMerrill account while Secretary of State. Broadening declaratory relief beyond those matters to address a theoretical Secretary

of State policy of unconstitutionally blocking users from social media accounts other than the @JohnHMerrill Twitter account would essentially require going back to square one, allowing an amended complaint to allege the existence of such a policy *despite the lack of any indication that such a policy exists, is likely to exist, or has yet harmed Plaintiffs in any way*, allowing discovery or joint stipulations as to any such policy and any implicated formerly private social media accounts, determining whether users were blocked from those other accounts on the basis of their viewpoint, and determining whether those other accounts are public forums subject to the First Amendment. In other words, a case challenging the Secretary of State's policies regarding other social media accounts, or social media accounts more generally, would be an entirely different case than this one.

The jurisdictional problem with allowing such a case to proceed here with respect to other private Twitter accounts coopted at some future time by the Secretary of State for official use is that no Article III live case or controversy concerning the blocking of individuals from any other such Twitter account has yet come into existence, triggering jurisdictional concerns. Plaintiffs do not allege that they have been blocked from a formerly private Twitter account (other than the @JohnHMerrill account) that has been coopted by the Secretary of State as a tool of his administration; nor do Plaintiffs have any imminent chance of even interacting with such an account, much less being blocked from it, as there is no evidence that any such account exists. There is no evidence of record that the Secretary of State had or has a policy of converting any other personal social media account to a tool of the Secretary of State's office, or of subjecting citizens to viewpoint-based blocking from any such account. Plaintiffs' concern here that Secretary Allen might

someday unblock his own personal Twitter account, might use it as a tool of his administration as Secretary of State, and might one day block Plaintiffs or someone else, is speculative and attenuated at best. Allowing Plaintiffs to essentially amend their Complaint to seek declaratory relief from such future conduct would implicate standing and ripeness concerns. *In re Jacks*, 642 F.3d 1323, 1332 (11th Cir. 2011) ("A claim is not ripe when it is based on speculative possibilities."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ("Our cases have established that the irreducible constitutional minimum of standing contains three elements," including that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent, not conjectural or hypothetical; further, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (citations and internal quotation marks omitted)). *Cf. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 191 (2000) ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum.").

Plaintiffs contend that their concern about Defendant Allen one day reopening his Twitter account and unconstitutionally blocking them from it is substantiated by the fact that Defendant Allen has not disclaimed former Secretary Merrill's policy of blocking them from the @JohnHMerrill Twitter account, nor has Defendant Allen abandoned the fight for the constitutionality of that policy. The mere fact that the Defendant has not abandoned his fight over the constitutionality of Merrill's policy of blocking individuals from the @JohnHMerrill account is not sufficient to establish a reasonable likelihood that the

Secretary of State plans to use some other account in a similar way in the future, particularly, where, as here, the Secretary of State has no power over the @JohnHMerrill account, has not used another account in a similar way, and states that he intends not to use another personal account in a similar way in the future. *Cf. Nat'l Advert.*, 402 F.3d at 1334 ("The only evidence that [the plaintiff] has presented in this case to suggest that the City might return to its previous version of the ordinance is the fact that the City has defended its ordinance. However, once the repeal of an ordinance has caused our jurisdiction to be questioned, [the plaintiff] bears the burden of presenting affirmative evidence that its challenge is no longer moot. Mere speculation that the City may return to its previous ways is no substitute for concrete evidence of secret intentions."); *cf. also One Wisconsin Now v. Kremer*, No. 17-CV-820-WMC, 2019 WL 2162231, at *1 (W.D. Wis. May 17, 2019) ("*Kremer II*") (finding "silly" the plaintiff's argument that it faced a reasonable likelihood of future injury from the original defendant's successor in office who also had a different Twitter account with some of the same features as the original defendant's Twitter account from which the plaintiff had been blocked).

" '[B]ecause the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in justiciability doctrine, presents an important restriction on the power of the federal courts.' " *Troiano*, 382 F.3d at 1282 (quoting *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998)). "The doctrine of justiciability prevents courts from encroaching on the powers of the elected branches of government and guarantees that courts consider only matters presented in an actual adversarial context." *Al Najjar*, 273 F.3d at 1335. Allowing this case to proceed on the

theory that Defendant Allen may one day revive his personal Twitter account, use it as a tool of his office, and block Plaintiffs or others on the basis of viewpoint or content not only expands this case beyond that contemplated in the Complaint or the litigation of the last four years; it also runs afoul of the basic Article III concerns underlying the mootness doctrine by deciding the case in the vacuum of the hypothetical, untethered to real-world facts of an actual controversy that are integral to the adversarial context. *See Harrell*, 608 F.3d at 1265 ("[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).

Plaintiffs also cite *Etheredge*, 996 F.2d at 1173, to argue that this case is not moot because Defendant Allen's political affiliation as a conservative Republican places his ideology in juxtaposition to theirs and, therefore, makes it likely that he will block Plaintiffs in the future for expressing views contrary to his. *Etheredge* does not stand for the proposition that a likelihood of differing views between a plaintiff and an incoming public official necessarily keeps a First Amendment controversy alive or that differing views, without more, would substantiate a likelihood of unconstitutional restriction on speech. Even under *Etheredge*, there must be more than a mere potential for criticism in the future; there must be some basis to expect that the incoming public official will infringe on Plaintiffs' constitutional rights if they do voice viewpoints or content with which the incoming public official disagrees.

The complaint in *Etheredge* challenged a military policy that prohibited display of bumper stickers disparaging the Commander in Chief. *Etheredge*, 996 F.2d at 1175. After President George H. W. Bush, the Commander in Chief against whom Plaintiff's bumper stickers protested, left office and was succeeded by Bill Clinton (who happened to be from a different political party), the Eleventh Circuit found moot plaintiff's appeal from the denial of a motion for preliminary injunction seeking relief that was "specific to [the plaintiff's] anti-*Bush* stickers." *Id*. at 1176 (emphasis in original). However, the Eleventh Circuit noted that "the likelihood that [the plaintiff] would criticize President Clinton or some future president may be relevant to whether [the plaintiff's] remaining requests for permanent injunctive and declaratory relief present a live controversy." *Id*. Here, unlike in *Etheredge* where the challenged *policy* remained in effect despite the change in officeholders, there is no ongoing Secretary of State policy concerning the blocking of individuals from the @JohnHMerrill account (or any other social media account). Unlike in *Etheredge* where an ongoing policy of prohibiting criticism continued after the replacement of the public official, there is nothing here to substantiate a likelihood that, just because Plaintiffs plan to criticize Defendant Allen on social media in the future, Defendant Allen will one day unconstitutionally block them from a public forum on the basis of their viewpoints or the content of their speech, even if he disagrees with those viewpoints and content.

Plaintiffs also argue that their claim for declaratory judgment is not moot *as against Merrill*. (Doc. No. 68 at 4-5 (in which Plaintiffs argue that Merrill remains as a defendant for declaratory judgment purposes).) In support of their argument, Plaintiffs cite *Kremer II*

and *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940 (W.D. Wis. 2019) ("*Kremer I*"). In *Kremer I*, the court found that three members of the Wisconsin State Assembly, including Jesse Kremer, unconstitutionally blocked the plaintiff from their respective Twitter accounts. *Kremer I*, 354 F. Supp. 3d at 956. The court so found despite noting that "any requested relief against Kremer would now appear to be moot" because Kremer had decided not to run for reelection and because "it appear[ed] from local newspapers" that another individual had already succeeded Kremer in office. *Kremer I*, 354 F. Supp. 3d at 957 n.14. *Kremer I* noted that a motion to dismiss the claims against Kremer as moot was pending at the time and stated that the court would "take up that motion in a later opinion and order." *Id*. The court did not explain why it went forward with entering summary judgment against Kremer while the claims against him appeared to be moot, and Plaintiffs in this case have not been able to satisfactorily explain why it did so. *But see Okpala v. Jordan*, 193 F. App'x 850, 852 (11th Cir. 2006) ("Generally, if a case becomes moot and—as a result—a federal court cannot provide meaningful relief, the court must dismiss the case." (citing *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003)).

Subsequently, in *Kremer II*, the court obscurely addressed the mootness issue as follows:

> As described in the court's prior opinion and order, defendant Jesse Kremer opted not to run for reelection. Instead, Timothy S. Ramthun was elected and now serves as the State Representative to Wisconsin's 59th Assembly District. Under Federal Rule of Civil Procedure 25(d), Ramthun would ordinarily be automatically substituted for Kremer, though there is no need to change the caption given that this order disposes of the case, leaving only the issue of attorney's fees remaining. Defendants further seek to dismiss plaintiff's claim against Kremer (now ostensibly asserted against Ramthun) on mootness grounds.

> Plaintiff essentially concedes that Kremer's leaving public office renders its claim for injunctive relief against him moot. In particular, for obvious reasons, plaintiff no longer has any need to seek entry of an injunction against him. Still, plaintiff argues that a claim against the *new* state representative is not moot because "there is a reasonable expectation that OWN could be subjected to the same conduct by Kremer's successor, who recently created an official Twitter account that OWN now follows." (Pl.'s Opp'n (dkt. #85) 3.) This is a silly argument.[9] The fact that Ramthun now has a Twitter account with some of the same features of Kremer's does not mean that he is likely to block OWN, especially in light of this court's decision that Representatives Vos, Nygren and Kremer violated OWN's First Amendment rights. To the extent that he does, plaintiff is free to bring another lawsuit against Ramthun, but the court will not presume a future violation will occur, much less allow plaintiff to pursue a claim against Ramthun based on the facts before it in this lawsuit. Even so, Jesse Kremer remains as a defendant for purposes of seeking declaratory judgment as set forth below, since the violation of plaintiff's rights occurred during his time in office.

*Kremer II*, 2019 WL 2162231, at *1 (W.D. Wis. May 17, 2019).

Thus, despite noting that Ramthun would "ordinarily" be substituted for Kremer, the *Kremer II* court did not explain why it declined to change the caption of the case or why it retained Kremer, who was sued in his official capacity only, as a defendant for declaratory judgment purposes. *Kremer II* left the basis of its reasoning on the mootness issue as a puzzle for the reader, and Plaintiffs have been unable to offer any helpful legal authority to solve it. What relevant legal authority is handily available seems to undercut the result in *Kremer II*.

---

[9] By contending that the new Secretary of State might one day subject them to similar conduct with regard to some other Twitter account, the Plaintiffs raise the same argument that the *Kremer II* court found to be "silly." The Court agrees with the *Kremer II* court that the argument is without merit.

"[L]awsuits brought against employees in their official capacity[10] 'represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–166, (1985). "This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. The real party in interest is the government entity, not the named official." *Id.* (citation omitted). Accordingly, Rule 25(d) of the Federal Rules of Civil Procedure provides that, when a public officer sued in his official capacity ceases to hold office during the pendency of the case, "[t]he officer's successor is *automatically* substituted as a party." (Emphasis added.) Rule 25(d) further provides that "[l]ater proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d). Thus, Kremer's name on the caption in *Kremer II*, though a "misnomer," did not prevent the automatic substitution from occurring. Neither the *Kremer II* court nor Plaintiffs offered any plausible explanation as to how, in light of Rule 25(d), Kremer remained in his official capacity as a defendant to the claim for declaratory relief.

Further, *Kremer II* offers no legal authority or analysis to support the court's decision to retain Kremer as a defendant solely for declaratory judgment purposes simply because the violation of the plaintiff's rights occurred while Kremer was in office. Rule

---

[10] Plaintiffs sued Merrill solely in his official capacity as Secretary of State. (Doc. No. 1.)

25(d) contains no such exception within its plain terms. It does not appear Kremer was sued in his individual capacity (and Merrill certainly was not). Further, both Plaintiffs and *Kremer II* fail to address why, after Kremer left office and could no longer operate his Twitter account as a public forum for his constituents, any declaratory judgment against Kremer would yield meaningful relief. Though Plaintiffs presumably remain blocked from the @JohnHMerrill account, that circumstance no longer presents a potential or ongoing constitutional injury here because, as Plaintiffs themselves recognize, the @JohnHMerrill Twitter account "is no longer used as a tool of governance since Merrill's term as Secretary of State has ended." (Doc. No. 68 at 1.) "A plaintiff seeking only injunctive or declaratory relief must prove not only an injury, but also 'a "real and immediate threat" of future injury in order to satisfy the "injury in fact" requirement'" of Article III. *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003); citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1274 (11th Cir. 2003)). "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Adler*, 112 F.3d at 1477. *Cf. Koziara*, 392 F.3d at 1305 ("For a plaintiff seeking prospective relief to have standing, he 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265 (11th Cir. 2001)). On this record, there is no basis for a finding that Plaintiffs are in imminent danger of a constitutional injury by being blocked from the @JohnHMerrill account (or from any other account, for that matter).

Because *Kremer II* appears to run against the grain of both Article III case or controversy requirements and the plain text of Rule 25(d), and because neither *Kremer II* nor Plaintiffs provide a coherent justification for doing so, the Court will not rely on *Kremer II* for persuasive authority with respect to whether Plaintiffs' declaratory judgment claims survive against Merrill simply because the alleged constitutional violation took place while he was Secretary of State. Rule 25 does not contemplate allowing suit to proceed against defendants in their capacity as former officials, and Plaintiffs face no reasonable likelihood of future constitutional injury if Merrill continues to block them from the @JohnHMerrill account.

In support of their argument that their claim for declaratory judgment is not mooted by the implications of Merrill's resignation, Plaintiffs also cite *Felts v. Vollmer*, No. 4:20-CV-00821 JAR, 2022 WL 17546996 (E.D. Mo. Dec. 9, 2022), in which a court held that a public official's resignation from office "d[id] not … moot" the "[p]laintiff's "claims for declaratory relief and monetary damages" regarding the blocking of the plaintiff from a Twitter account that the official created while in office, embedded in the government's website, operated with government resources, and used as a tool of his office to "discuss official government business and interact with Twitter users about government business." *Id.* at **2, 4-5, 8-9. While the defendant was still in office and still serving as the "final authority regarding communications, including the use of social media, on behalf of" his office, Plaintiff was unblocked from the account. *Id.* at **2-4.

Without elaboration, *Felts* cited only two legal principles in support of its holding that the declaratory judgment claim was not moot. First, *Felts* noted that " ' " '[a]

defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' " ' " *Id*. (quoting *Abdullah v. Cnty. of St. Louis, Mo*.,[11] 52 F. Supp. 3d 936, 947 (E.D. Mo. 2014) (quoting in turn *Friends of the Earth*, 528 U.S. at 189 (quoting in turn *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982)))). Second, *Felts* noted that "[n]ominal damages provide the necessary redress for a completed violation of a legal right." *Id*. (quoting *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021)). Because this present case does not involve nominal damages, and because the mootness exception involving voluntary cessation of challenged conduct was *Felts's* only other stated justification for proceeding with issuance of the declaratory judgment, the Court will discuss *Felts* in Section III.B. of this Memorandum Opinion and Order, in which it addresses Plaintiffs' other voluntary-cessation-related arguments.

Accordingly, the Court concludes that Plaintiff's claim for injunctive relief is moot. Further, the Court rejects Plaintiffs' arguments that their declaratory judgment claim remains viable as against the current Secretary of State, Defendant West. The Court also rejects Plaintiff's argument that their declaratory judgment claim remains viable as against Merrill pursuant to *Kremer II*.

---

[11] The Court notes that *Abdullah* concerned a preliminary injunction, and the quote here is taken from the context of the *Abdullah* court's consideration of whether voluntary cessation of challenged conduct mooted the request for a preliminary injunction, not declaratory relief.

B. The Mootness Exception for Voluntary Cessation of Challenged Conduct is Inapplicable

Plaintiffs argue that this case falls within the mootness exception that applies when a defendant voluntarily ceases their allegedly unlawful conduct. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 174 (2000) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). However, by its very nature, this voluntary cessation exception applies when the defendant voluntarily decides to cease the challenged conduct, rather than when the offending conduct ends due to factors beyond the defendant's control.[12] *See id.* (explaining that the purpose of the exception is to prevent defendants from depriving the court of jurisdiction by voluntarily ceasing a challenged practice during litigation, then resuming the practice after dismissal of the case); *see also Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1285 (11th Cir. 2004) (" '[I]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.' " (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 n.4 (1953))).

This is not a case in which the Secretary of State voluntarily ceased the challenged practice and, upon dismissal of this case, will be "free to return to his old ways." *Friends*

---

[12] Conduct that has involuntarily ceased but that is likely to recur may fall within the mootness exception for disputes that are capable of repetition but evade review. That exception is discussed in Section IV.C. of this Memorandum Opinion and Order.

*of the Earth*, 528 U.S. at 174 (citations and internal quotation marks omitted). Rather, Merrill chose not to run for reelection and, when his term ended, he remained in sole control of the @JohnHMerrill account;[13] thus, the current Secretary of State no longer has any power to continue to enforce his predecessor's policies related to the blocking of individuals from the @JohnHMerrill account or any of his predecessor's private social media account(s). *Cf. Nat'l Treasury Emp. Union v. Campbell*, 654 F.2d 784, 787-88 (D.C. Cir. 1981) (holding that, despite the availability of substitution under Rule 25(d), "where the conduct challenged is personal to the original named defendant, even though he was sued in his official capacity, a request for prospective injunctive relief is mooted when the defendant resigns;" in holding that the voluntary cessation exception did not apply, the court noted that the complaint contained no factual allegations to support a claim against the defendant's successor and that, in any event, external circumstances had changed in a way that "changed the raison d'etre of the challenged conduct, and thus the basis for plaintiffs' claim of prospective relief").

Plaintiffs concede that Merrill's decision to "leave office and take the @JohnHMerrill account with him" is not an act of voluntary cessation of challenged conduct within the scope of the mootness exception. (Doc. No. 81 at 8.) Rather, they argue that voluntary cessation of challenged conduct can be found in the current Secretary of

---

[13] Plaintiffs do not argue that Merrill's decision to leave office and take control of the @JohnHMerrill account with him to the private sector is attributable to the Secretary of State or constitutes voluntary cessation of challenged conduct within the scope of the mootness exception.

State's "sudden eleventh-hour[14] decision to delete his [personal] Twitter account and assert" that, if he were one day to "use a personal Twitter account in the future to discuss [his] official functions," then "for so long as [he is] Secretary of State," he "do[es] not intend to block people for viewpoint-based reasons." (*Id.*) As noted in Section IV.A. of this Memorandum Opinion and Order, Plaintiffs attempt to avoid mootness by recasting this dispute as being about the Secretary of State's unconstitutional blocking of individuals from Twitter accounts generally, or more specifically about the blocking of individuals from formerly personal Twitter accounts that the Secretary of State has coopted for use as a public forum and a tool of his office. As explained in Section IV.A, this case cannot extend so far. The Complaint does not contain allegations that could sustain a request for declaratory judgment beyond one that addresses the constitutionality of blocking of individuals from the @JohnHMerrill account, nor over the past four years have the parties litigated the constitutionality of any action other than the blocking of Plaintiffs from the @JohnHMerrill account.

Not only does the Complaint not extend so far, but, while Secretary of State, Merrill himself had no policy of viewpoint-based blocking of individuals from accounts other than the @JohnHMerrill account (or Merrill's own personal social media accounts more generally); thus, by vowing not to block individuals on the basis of viewpoint while in office, whether from the official Secretary of State Twitter account or from some personal

---

[14] The Court notes that, within approximately one month after becoming Secretary of State, Defendant Allen submitted his sworn affidavit that, while operating in his capacity as Secretary of State, he had no intention of blocking anyone from a Twitter account on the basis of viewpoint.

account of his own that he may use in the future, the current Secretary of State has not altered or voluntarily ceased any policy with respect to any Twitter accounts that are within the control of the Secretary of State. For these reasons, the Secretary of State's policy of not engaging in viewpoint-based blocking of *other* Twitter accounts does not constitute voluntary cessation of the conduct Plaintiffs challenge in their Complaint.

Plaintiffs argue that, prior to closing down his personal Twitter account, Defendant Allen modified that account to contain the following identifier: "Alabama's 54th Secretary of State." Plaintiffs also argue that, within three days of taking office, and before closing down his personal Twitter account, Defendant Allen did tweet two things from his personal Twitter account about his official duties.[15] (*Id.* at 10-11.) However, Plaintiffs are not merely challenging Merrill's alleged policy of using his personal Twitter account for official business while Secretary of State; they are challenging his alleged policy of blocking them for viewpoint-based reasons. But Plaintiffs do not allege that Defendant Allen blocked them from his personal Twitter account, or that they tweeted critical things at his personal account that might subject them to viewpoint-based blocking, or that Defendant Allen engaged in blocking anyone from his personal account on the basis of viewpoint while Secretary of State. That Defendant Allen allegedly briefly used his personal Twitter account in his capacity as Secretary of State and as a tool of his office[16]

---

[15] The two alleged tweets had nothing to do with the Secretary of State's Twitter-blocking policies. (Doc. No. 68 at 11.)

[16] The Court makes no finding that it was so used. For the reasons previously stated, allowing discovery and argument as to Defendant Allen's use of *his* personal account, and also as to whether Defendant Allen engaged in viewpoint-based blocking of individuals from that account during the

does not mean that he also adopted a policy of blocking Plaintiffs or anyone from his personal account while it was so used.[17] Nor would any such policy fall within the scope of declaratory relief requested in the complaint. For these reasons, Defendant Allen's brief alleged use of his personal Twitter account while Secretary of State does not bring his personal account within the realm of voluntary cessation of the *challenged* conduct.

As mentioned in Section IV.A. of this Memorandum Opinion and Order, Plaintiffs cite *Felts v. Vollmer*, 2022 WL 17546996,[18] in support of their argument that their claim for declaratory judgment is not mooted by the implications of Merrill's resignation. In *Felts*, four months prior to leaving office in June 2021, the defendant unblocked Plaintiff from a Twitter account he was allegedly using as a tool of his office, thus voluntarily ceasing the challenged municipal policy of blocking the plaintiff from his Twitter account. Other than the existence of a claim for nominal damages,[19] the only other rationale given

---

brief time he was tweeting from his personal account while Secretary of State, would be beyond the scope of the Complaint and this action.

[17] Plaintiffs also argue that Defendant Allen used his personal Twitter account as a tool of his office while he was a member of the Alabama House of Representatives. This argument is illustrative of why allowing Plaintiffs to proceed against Defendant Allen goes far beyond the scope of the Complaint. *See, e.g., Campbell v. Reisch* 986 F.3d 822, 826-27 (8th Cir. 2021) (suggesting the possibility of a fundamental First Amendment difference between an executive branch official carrying out executive duties through a Twitter account and a state legislator using a Twitter account to communicate with the public about legislation). Moreover, even if Defendant Allen did use his personal account as a tool of his legislative office while in the House of Representatives, and even if he engaged in viewpoint-based blocking while doing so, the constitutionality of his actions while serving as a state representative are moot, and Plaintiffs lack standing because they do not argue that they personally were blocked by him in that capacity.

[18] As of the writing of this Memorandum Opinion and Order, *Felts* is on appeal.

[19] Plaintiffs argue that "there is nothing in [*Felts*] to suggest that its finding turned on the fact that the defendant was claiming nominal damages." (Doc. No. 81 at 7.) Plaintiffs are simply incorrect.

in *Felts* for the finding that the case was not moot was that "[a] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id*. (citations and internal quotation marks omitted). The Court agrees with Defendant that this is not a voluntary cessation case, and, thus, the voluntary cessation rationale in *Felts* does not save Plaintiffs' declaratory judgment claims from mootness.

Plaintiffs argue that, in addition to voluntary cessation, "the [*Felts*] court was also faced with the fact that," *after* voluntarily ceasing the challenged conduct by unblocking the plaintiff, the defendant official resigned from office and "[took] the Twitter account in question with him when he left." (Doc. No. 81 at 6.) As Plaintiffs argue elsewhere (Doc. No. 81 at 8) and the Court agrees, Merrill's leaving office, taking control of the @JohnHMerrill account with him without first unblocking Plaintiffs, is not a voluntary

---

Contrary to Plaintiffs' representations (Doc. No. 81 at 6), the fact that nominal damages were sought in *Felts* was central to that court's consideration of the mootness question even as it pertained to the claim for declaratory judgment. *Felts*, 2022 WL 17546996, at *5 ("Reed's resignation does not, however, moot Plaintiff's claims for declaratory relief and nominal damages…. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) ('[N]ominal damages provide the necessary redress for a completed violation of a legal right.')."). *See also id.* at * 1 (citing the court's June 24, 2022 Order on the mootness issue); *Felts*, Case No. 4:20-CV-821 JAR, Doc. No. 127 at 3 (June 24, 2022 Order stating "Reed's resignation does not moot Plaintiff's claims because she suffered a past injury that may properly be addressed by an award of nominal damages … Because Plaintiff's claims" for declaratory relief and nominal damages "are based upon Reed's alleged completed violation of her … rights, she may continue to pursue those claims."); *see Pucket v. Rounds*, No. CIV. 03-5033-KES, 2006 WL 120233, at *6 (D.S.D. Jan. 17, 2006) ("A claim for damages also will prevent a claim for declaratory relief from becoming moot as well." (citing *F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995); *Crue v. Aiken*, 370 F.3d 668, 677 (7th Cir. 2004)). Plaintiffs do not seek nominal damages in this case; thus, it is not necessary to discuss whether a claim for nominal damages could have saved Plaintiffs' declaratory judgment claim, as it did for the plaintiff in *Felts*.

cessation issue.[20] Thus, Plaintiffs' reliance on *Felts* is not helpful in saving their claims from being moot.

Accordingly, Plaintiffs' declaratory judgment claim does not fall within the mootness exception for a defendant's voluntary cessation of challenged conduct.

## C. Plaintiff's Claims Do Not Fall Within the Mootness Exception for Cases That Are Capable of Repetition Yet Evading Review

Plaintiffs argue that, "even if the request for declaratory relief is technically mooted by the fact that Merrill has left office, this case falls 'within the established exception to mootness for disputes capable of repetition, yet evading review.' " (Doc. No. 68 at 2 (quoting *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). "The narrow exception for actions that are capable of repetition yet evading review applies only in the exceptional circumstance in which the same controversy will recur and there will be inadequate time to litigate it prior to its cessation." *Al Najjar*, 273 F.3d at 1340.

"Although this doctrine is frequently invoked, it has been described as applying only in 'exceptional situations.' " Wright & Miller, § 3533.8 Capable of Repetition, Yet Evading Review, 13C Fed. Prac. & Proc. Juris. § 3533.8 (3d ed.) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)). "A two-part test must be met to satisfy the 'capable of repetition, yet evading review' exception to mootness: (1) there must

---

[20] Even if this were a voluntary cessation case, the Court would not find *Felts* persuasive. *Felts's* lack of analysis of the voluntary cessation doctrine renders it unhelpful in this case. *Cf. Wooten*, 747 F.3d at 1322-23 (detailing the factors and burden-shifting applicable where a government official's cessation of conduct is offered as a basis for a finding of mootness).

be a " 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party," and (2) a showing that the "challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." *The News-J. Corp. v. Foxman*, 939 F.2d 1499, 1507 (11th Cir. 1991) (citations omitted); *see also Wisconsin Right to Life*, 551 U.S. 449, 462 (2007) ("The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.' " (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998))).

Though the element that the same controversy will recur involving the same complaining party "can be satisfied 'based on expectations that, while reasonable, [a]re hardly demonstrably probable,' it is sufficient to show that likelihood exists that the [plaintiff] potentially can be deprived" of its First Amendment rights "in a similar way in the future." *Foxman*, 939 F.2d at 1507 (quoting *Honig v. Doe*, 484 U.S. 305, 319 n. 6 (1988) (further citations and internal quotation marks omitted)).

Here, however, the Complaint seeks declaratory relief that Merrill's policy of blocking Plaintiffs from the @JohnHMerrill account was unconstitutional. There is no reasonable expectation that the Secretary of State will deprive Plaintiffs of their First Amendment rights "in a similar way" in the future. The @JohnHMerrill account is no longer under the Secretary of State's control but is instead under the control of private citizen Merrill; therefore, there is no likelihood that Plaintiffs will be subjected to similar constitutional injury even if Merrill continues to block them from the @JohnHMerrill account.

Plaintiffs allege that Defendant Allen temporarily used his own Twitter account as a tool of office while Secretary of State (Doc. No. 68 at 10). Plaintiffs also allege that they are still active on Twitter and plan to criticize Defendant Allen on Twitter "where warranted." (Doc. No. 68 at 25.) Even assuming the truth of those allegations, there is nothing before the Court to support the conclusion that either Defendant Allen ever had or will have a policy of viewpoint- or content-based blocking of individuals from any Twitter account in his capacity as Secretary of State, or that the Secretary of State has or had a similar blocking policy regarding any Twitter account (other than the @JohnHMerrill account to which Plaintiffs' claims are directed) that might arguably be a tool or public forum of the Secretary of State's office. Rather, Defendant Allen has definitively stated that he has no intention of engaging in viewpoint- or content-based blocking of Plaintiffs or others with respect to Twitter accounts within his control as Secretary of State. (Doc. No. 80-1 ("As a matter of practice, the [Secretary of State's] Office does not block people [from the @alasecofstate account] for viewpoint-based reasons. I intend for that practice to remain in effect for the duration of my time as Secretary of State…. If I were to use a personal Twitter account in the future to discuss my official functions, I—for so long as I am Secretary of State—do not intend to block people for viewpoint-based reasons."). Therefore, even if the Court did allow Plaintiffs to expand their case to challenge Defendant Allen's potential use of his own personal Twitter accounts (which it will not, as explained previously throughout this Memorandum Opinion and Order), the possibility that Plaintiffs will be subjected to a similar constitutional injury is remote, at best. "The remote possibility

that an event might recur is not enough to overcome mootness." *Al Najjar*, 273 F.3d at 1336.

Because the controversy in this case is not reasonably likely to recur, Plaintiff's claim for declaratory relief does not fall within the mootness exception for controversies that are capable of repetition but evade review.[21]

D. Request to Vacate the January 10, 2023 Memorandum Opinion and Order (Doc. No. 60)

Citing *United States v. Munsingwear, Inc*., 340 U.S. 36, 38 (1950), Defendants argue that, because the case is moot, the Court should, "out of an abundance of caution," vacate its previous interlocutory partial summary judgment order. At the February 15, 2023 hearing, in response to the Court's questions regarding the applicability of *Munsingwear*, Defendant wavered on whether he felt that *Munsingwear* vacatur was appropriate or needed. As Plaintiffs have no objection to Defendants' request to vacate the partial summary judgment order, the requested relief will be granted.

## VI.   CONCLUSION

Accordingly, it is hereby ORDERED as follows:

1.   The January 10, 2023 Memorandum Opinion and Order (Doc. No. 60) is VACATED as moot.

2.   This case is due to be DISMISSED as MOOT.

---

[21] Because Plaintiffs are not likely in the future to be subjected to being blocked from the @JohnHMerrill account in violation of the First Amendment, the Court pretermits discussion of whether the challenged action is too short in duration to be fully litigated prior to its cessation.

3.      A separate final judgment shall issue.

DONE this 27th day of March, 2023.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE